Robb & Rowley Theaters, Inc., *v.* Arnold.

4-5787 138 S. W. 2d 773

Opinion delivered March 18, 1940.

*Brickhouse & Brickhouse,* for appellant.

*Henderson, Meek & Hall, E. Chas. Eichenbaum, Beloit Taylor, House, Moses & Holmes, Eugene R. Warren* and *Carmichael & Hendricks,* for appellee.

HUMPHREYS, J. Two of the appellees, Adolph and Theodore Arnold, were the original plaintiffs and the other appellees were interveners in an injunction proceeding in the chancery court of Pulaski county to prevent appellant from closing an alley or passageway twenty feet wide for a distance of one hundred and fifty feet and fifty feet wide for a distance of sixty-eight feet, entering block 85 of the original city of Little Rock, Arkansas, on Louisiana street running west for the distance aforesaid, two hundred and eighteen feet, which alley or passageway they alleged had been acquired by themselves and the public by prescription from appellee's predecessors in title.

The alley or passageway was included in the description of lots purchased by appellant on June 9, 1937, as a part of the lots it purchased.

Appellant filed answers to the complaint and interventions denying that appellees and the public had acquired the right to use the alley or passageway by prescription. The cause was submitted to the trial court upon the pleadings, exhibits and testimony introduced, resulting in the following decree:

"That the plaintiffs and interveners have acquired an easement by prescription over the north twenty feet (N 20 ft.) of lot ten (10) and the east-sixty-eight feet (E 68 ft.) of lot three (3), all in block eighty-five (85), city of Little Rock, Arkansas, (being the lands hereinabove referred to as lands A, B and C), requiring that the said lands be continued as an open passageway in the condi-

tion in which said lands existed at the time of the institution of this suit, free from, and unobstructed by, improvements or obstructions of any kind, and open and available for purposes of ingress and egress to and from the buildings abutting on said pipes, mains, sewers and conduits as are now maintained under said lands.

"That the defendant, Robb & Rowley Theatres, Inc., be, and it hereby is, perpetually enjoined and restrained from interfering in the use of the lands described in paragraph (1) immediately hereinabove by plaintiffs and interveners herein, as an open passageway in the condition in which said lands existed at the time of the institution of this suit, for purposes of ingress and egress to and from the buildings abutting on said lands, and as a means of access to such pipes, mains, sewers and conduits as are now maintained under said lands.

"That the plaintiffs and interveners do have and recover from the defendant, Robb & Rowley Theatres, Inc., their costs herein expended."

An appeal has been duly prosecuted from said decree and the cause is here for trial *de novo*.

The record reflects that the original plat of block 35 in the city of Little Rock showed an alley twenty feet wide running through the center of said block from north to south; that the alley shown by the plat was in the town branch and was never used by anyone as an alley, but, on the contrary, was covered over and converted into and used as lots or parts of lots when buildings were constructed in the block fronting out on Fifth street or Capitol avenue, Sixth street and Center street; that at some time thereafter the public began to use as a passageway the alley involved in this suit, entering same on Louisiana street and continuing west two hundred and eighteen feet; that the public used twenty feet in width the first one hundred and fifty feet and then fifty feet in width for the remaining distance of sixty-eight feet in which to turn around and return to Louisiana street where they entered; that after the public began to use the alley in question buildings were constructed in the block fronting out on Fifth, Sixth

and Center streets and running back to the alley or passageway used by the public; that from time to time as these buildings were constructed doors or entrances were built in the rear end of the buildings for entries into and exits out of the buildings into the alley or driveway used by the public so that eventually the alley or driveway so used was entirely enclosed by the buildings abutting thereon.

It does not appear definitely just when the public began to use the alley or driveway, but it does reflect that the alley or driveway was being used by the public forty to fifty years before appellants attempted to close the alley or driveway.

W. G. Hall testified that when the Boyle Realty Company in which he was interested constructed its building abutting on the alley in question in 1923 the public was using the alley or driveway as a public alley and had been using same as an alley or driveway as far back as he could remember and had used it for its entire width and length when he was a boy; that at the time he was testifying he had been a resident of Little Rock for fifty-seven years; that in 1927 the Boyle Realty Company and the Kempner Theater Company both of whom had constructed their buildings abutting on the alley cut the grade of the alley down and paved same from its entrance on Louisiana street to the west line of the Kempner Theater building for a distance of one hundred and fifty feet into the block from the entrance of the alley on Louisiana Street at an expense of more than $961; that thereafter in 1929 the Boyle Realty Company laid sewer pipes and manholes in the alley and in 1930 H. R. Coffman, representing the Exchange National Bank, a predecessor in title of appellant, requested the Boyle Realty Company to give him or the bank a quit-claim deed to any interest it might have in the alley and made the same request to several of the other property owners who had built their buildings and abutted the rear end of them upon the alley in question; that he referred H. R. Coffman's request to H. M. Armistead, an attorney at law who at that time represented the Boyle Realty Company in order that he might make an

investigation as to the situation; that after making the investigation he advised the Boyle Realty Company that the alley or driveway was a public alley and so informed H. R. Coffman, representing the Exchange National Bank, by letter, which is as follows:

"Cockrill & Armistead
Little Rock, Ark.
October 16, 1930.

"Mr. H. R. Coffman
"American Exchange Trust Company,
"Little Rock, Arkansas.

"Dear Mr. Coffman:

"Referring to the request made by you and Messrs. Maurice Altheimer and Morris Sanders that quitclaim deeds be executed by the Quapaw Investment Company and Boyle Realty Company to the Exchange National Bank, conveying certain property in block 85, city of Little Rock, this matter, as you know, was referred to me as attorney for the two named companies. I also represent Mr. John F. Boyle.

"I regret to say that I cannot advise my clients to comply with your request. The investigations which I have made show that this alley is public and has been so used for a very long time. Unfortunately, Mr. Boyle is ill and his physicians will not permit him to transact any business. I feel sure that upon his return and as soon as he is able to transact business, you will reach an agreement with the property owners that will be satisfactory to all parties as to the use of this alley. The plot of the original city of Little Rock dedicated an alley through this block from north to south. The property owners by mutual agreement closed the north to south alley and opened a blind alley from east to west which had been in public use for a very long time, and it is not reasonable to ask the adjoining property owners to agree to quitclaim their rights without arrangements being made for access to their property or without restoring the original north to south alley.

"I return the original deeds which you request, having kept the carbon copies as a matter of record.

"Very truly yours,

"(Signed) H. M. Armistead.

"HMA-EL

"cc Mr. W. G. Hall

Mr. John F. Boyle

Mr. Leo Pfeifer

Mr. Calvin Ledbetter

Mr. Sam Grundfest."

K. Campbell testified that he worked in and about the rear of the building owned by Boyle Realty Company and that he observed cars belonging to the public generally regularly and frequently parking in and along the alley and in the space at the west end of the alley.

C. L. Doty, engineer for the Arkansas Power & Light Co., testified that in 1926 his company put in a six-inch steam line and electric conduits under ground in the alley to serve certain buildings abutting on the alley without getting permission from anyone, under the belief the alley was a public alley and not private property; that had the alley been private property his company would have applied to the owner or owners for permission to do so.

Virgil P. Knott testified that he was familiar with block 85 in Little Rock; that he made a survey of certain areas in said block for Louis Cohn in 1930 and made a report to him showing a space of fifty by sixty-eight feet in the rear of the one-story building which fronted on 5th street or Capitol avenue which was practically being used as a driveway and parking space with people coming and going in it while he was there and that there were a number of doors in the rear of the buildings opening out into the space and that the space was solid and firm with gravel and something on it and showed that the space had been used for an indefinite length of time.

Referring again to the testimony of Walter G. Hall we find these questions and answers:

"Q. Mr. Hall, you have directed most of your testimony to the alleyway adjoining the Hall Building.

(Meaning the Boyle Realty Building.) That alleyway extends from Louisiana street clear through to the loading door of the Sterling Stores, does it not? A. Yes, sir. Q. And the public uses it now, and has used it, for passageway to go from Louisiana street to the Sterling Stores? A. Yes. Q. The alley doesn't end at the end of your building? A. It is open clear through to the west 60 feet, or whatever it is, where the Sterling Store is built. Q. And that has been used by the public, generally? Anybody who has business in there has used that alley and had access to it for a period of many years, according to your certain knowledge? A. Yes.''

And again referring to Mr. Hall's testimony we find him saying that the Boyle Building was constructed with a covered passageway or loading platform at the rear or south end thereof because the alley was open and because Boyle Realty Company claimed the right to to keep it open and use it.

Father F. A. Allen, secretary to Bishop John B. Morris, who leased the property for one hundred years upon which the Sterling Building was erected so that the rear thereof abutted on the widest part of the alley or passageway, in answer to questions testified:

''Q. How long have you known this alleyway between the Hall Building (Boyle Building) and the Kempner Building and clear back to the Sterling Stores, the property owned by the Bishop? How long have you known that as an alley, in there? A. As far back as I can remember, it has always been open and used as an alley. Q. And how long is that? A. Possibly the last 25 years or so.''

Adolph Arnold, who is a party plaintiff in this suit and one of the appellees herein testified that he had lived in block 85 for fifty years. The following questions and answers appear in his testimony:

''Q. To your knowledge, how long has this area-way and passageway been used by the public? A. Well, I remember that there was a driveway approximately where the present alley is located fifty years ago, because, where the Hall Building (Boyle Building) stands

today, on this upper end, here, there was a five or six room building occupied by the present Alderman Leiser and his father and mother; then along Fifth street there were six or eight small stores, maybe ten of them, and they would drive in here, through the driveway, alongside this frame house and then in the back they would feed those different stores with their wagons. Q. This area-way marked in blue is part of the alleyway claimed by the defendants and part of the area-way sought to be left open by the interveners? A. Yes, that is the approximate location. Q. Since fifty years ago? A. Yes, sir. Q. Has it been continuously used by the public since that time? A. Yes, sir."

The testimony referred to and quoted in part in this opinion is the testimony of witnesses who were introduced by the appellees, but we find nothing in the evidence of any of the witnesses introduced by appellant conflicting with the long usage of this alley or passageway by the public, except the testimony of H. R. Coffman, who testified that he obtained in 1930 quitclaim deeds from the Arnolds and the Kempner Theater Company for any interest they might have in the alley or passageway. The quitclaim deeds recite in their face that they are conditional. The condition being that the grantors conveyed their rights in the alley on condition that the bank would furnish them ingress and egress into their buildings which abutted on the alley in lieu of the use of the alley upon which their property abutted. He also testified that he failed to get quitclaim deeds from other persons owning property abutting on the alley and the matter was dropped. After the execution of the conditional deeds from the Arnolds and the Kempner Theater Company, they continued to use the alley and driveway just as they had for many years. And appellant testified that his predecessors in title had paid the taxes on the property which it bought including the alley at all times.

It, perhaps, was unnecessary to recite and set out any of this evidence in view of the fact that appellant admits that the record shows the long and continued use of the alley. The writer, however, thought best to set

this evidence out in order that the opinion might be more intelligible to anyone who might be sufficiently interested to read same. Appellants contend, however, that, notwithstanding the long continued use of the property in question, such user was not hostile or adverse to the owner of the property and of such character to ripen into or constitute an easement. In other words, its contention is that since there is no affirmative showing in the record that the use thereof was permissive the court must presume that the alley or passageway was used with the permission of the then owner thereof. We do not think that such a presumption must be indulged by this court under this record. The use thereof began at a time when the memory of man runneth not to the contrary and the use thereof according to this record was open, notorious and adverse to the owners in the chain of appellant's title. We think under this record the presumption should be indulged, if any presumptions are indulged, that the easement originated in a grant the evidence of which has perhaps been lost. It is stated in 17 Am. Jur., § 72, p. 981, that: "The whole idea of the acquisition of easements by prescription is based, as has been shown, upon a presumption—namely the presumption of the existence of a grant which has been lost."

We think appellant is in error in insisting that an easement beginning in permissive use cannot ripen into title thereto by long, open and continuous use. This court said in the case of *McGill* v. *Miller*, 172 Ark. 390, 288 S. W. 932, that: "It is true that the use originated as a permissive right and not upon any consideration, but the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of adjoining property as a matter of right and not as a matter of permission. In other words, the length of time and the circumstances under which the alley was opened were sufficient to establish an adverse use so as to ripen into title by limitation." And it was also said in the McGill case that: "The length of time and the circumstances under which the alley was open were sufficient to establish an adverse use so as to ripen into title by limitation."

This court also said in the opinion written by Justice McCulloch in the case of *McCracken* v. *State,* 146 Ark. 300, 227 S. W. 8, 228 S. W. 739, that: "It necessarily follows from the law thus announced, that it is immaterial how and under what circumstances the unrestricted use of the way by the public began. If the use is continuous and unrestricted for the statutory period of limitations, the right becomes permanent and irrevocable, even though the use was originally permitted under a contract with one or more individuals. In order for the owner to preserve his right to revoke the use beyond the period of limitations, he must maintain his control over the way by some overt act showing the use continued as a permissive one. The evidence in the case does not disclose any such act on the part of the owner. The way was used continuously by the public without let or hindrance. There is, it is true, a conflict in the testimony, but that conflict has been settled against appellant by the verdict of the jury."

In the case last cited there was a conflict in the testimony, but in the instant case there is no conflict of any consequence as to the continuous, open, notorious use of the alleyway in question by the public.

We do not attach any importance to the fact that appellant and his predecessors in title paid the taxes during all the years because it is only the exception where the public has acquired an easement over land that the owner does not continue to pay the taxes.

Neither do we attach any importance to the quitclaim deeds that were obtained from the Kempner Theater and the Arnolds because in the first place the quitclaim deeds were conditional and the conditions were never complied with and after the deeds were obtained the public and even the grantors in the quitclaim deeds continued to use the property just as it had been used for forty or fifty or more years and for the further reason that an easement once acquired by the public could not be deprived of its easement by a deed from one or two citizens constituting a part of the public.

Appellant also contends that it is an innocent purchaser for value without the knowledge that the public

had acquired any interest in the alleyway or driveway. Had appellant made any kind of an investigation, it must have found out as much or more than H. M. Armistead did when he investigated the matter and he states positively in his letter that he "discovered that it was a public alley and had been for a long time." When appellant bought the land by an ordinary inspection and inquiry, he could have found out not only that the use of the alley had been acquired by the public, but he would have found in the alley manholes and sewers under ground and would have found that the alley had been paved with concrete and with gravel its entire length and width and would have found that the public utilities had put in pipes and wires under ground for the purpose of servicing the buildings surrounding the alley believing at the time that it was a public alley and would have found that openings or doors were in the buildings all around the alley for the purpose of entries into and exits from the buildings into the public alley. He ·certainly had constructive notice and cannot in the face of the constructive notice maintain that he was an innocent purchaser.

On the trial *de novo* before this court we find that the public acquired an easement to this alleyway or driveway by open, notorious and adverse use even before the buildings were constructed and that it has never done anything to abandon its right to the alleyway or driveway by prescription and that its right still exists.

We are inclined to the view that the findings of the trial court and the decree rendered thereon are too broad and should have been restricted to a finding that the alley or driveway was a public alley and that the public had the dominant and controlling right therein. In other words, that any rights acquired by the adjacent property owners to the alley was a servient and not a superior right to that of the public. We, therefore, modify the findings and decree to hold that the public owns the alley with the dominating right to control same and as modified the decree is affirmed.