Simon ZUNAMON, CHICAGO MILL AND LUMBER COMPANY, Billy SCALES, Alton CHAMBLISS, and THE MELINDA HUNTING CLUB *v.* Enoch JONES, Eugene DOBSON, Tom MORELAND, T. R. MORELAND, Ike BOWMAN, Billy FERGUSON, and H. C. NEELY

CA 80-339                                    610 S.W. 2d 286
Court of Appeals of Arkansas
Opinion delivered January 28, 1981 Recalled
Reinstated February 25, 1981

*W. H. Daggett* and *L. David Stubbs*, for appellants.

*Smith, Smith & Hubbell*, by: *Billy J. Hubbell*, for appellees.

TOM GLAZE, Judge. This is an appeal from a Chancery Court decree wherein it wa held that the appellees and the general public had acquired an easement by prescription over a roadway through open and unenclosed timberlands owned by the appellant, Simon Zunamon. These lands are operated by appellant, Chicago Mill and Lumber Company, in furtherance of its timber interests in Desha County. Chicago Mill had leased a part of this land (which involved the roadway in question) to appellant, Melinda Bar Hunting Club.[1] In March, 1979, the Melinda Club members caused a cable to be placed across the roadway, blocking public access to it. The appellees filed suit seeking an injunction to remove the cable, contending that the road was a public road acquired by prescription. Zunamon and Chicago Mill defended the suit, claiming that they gave blanket permission for the public to use the road, and that the permissive use of the roadway prevented the creation of an easement by prescrip-

---

[1] Appellees' complaint was first filed against the Hunting Club as the Melindy Hunting Club. The Melinda Bar Hunting Club filed a Motion to Dismiss and the appellees amended their complaint to reflect the correct name of the Club.

**ERRATA**

*271 ARKANSAS REPORTS at 791*

Detach at perforation, moisten the back, and paste over the first two lines of the first full paragraph on page 791 of *Zunamon v. Jones:*

The controlling law of the case before us is stated in *Fullenwider v. Kitchens,* 223 Ark. 442, 266 S.W.2d 281 (1954).

tion. From an adverse decision, Zunamon and Chicago Mill contend on appeal that the appellees did not present sufficient proof that an easement by prescription had been created. Moreover, they also appeal from the lower court's decision which granted public prescription rights on land other than the roadway owned by Zunamon.

The controlling law of the case before us is stated in *Fullenwider v. Kitchens*, 23 Ark. 442, 266 S.W. 2d 281 (1954). The court in *Fulenwider*, after it reviewed the leading prescription right cases in Arkansas, stated the law as follows:

> A consideration of the many opinions of this court regarding the acquisition of a right-of-way over lands makes it clear, in our opinion, that no real conflict exists. All our opinions are in harmony on one point, *viz.*: Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to this interest *or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse*, then such usage ripens into an absolute right. (Emphasis supplied.)

Zunamon and Chicago Mill argue, and we believe correctly, that the original prescription in favor of a permissive use cannot be rebutted solely by evidence showing the road was used by the public over an extended period of time. However, the appellants' argument also seems to include that some person or persons were required to communicate to Zunamon or Chicago Mill that they intended to use the roadway adversely. This is not true. The length of time and circumstances under which the roadway was opened and used is sufficient to establish an adverse use. *McGill* v. *Miller*, 172 Ark. 390, 288 S.W. 932 (1926). Again, the court in *Fullenwider* made it clear what kind of knowledge was required to show an adverse claim wherein it held:

> In our opinion . . . the weight of the testimony supports

the finding of the Chancellor that appellee and her predecessors in title used road "B" for more than seven years after appellants and their predecessors in title *knew or should have known that the road was being used adversely.* [Emphasis supplied.]

From the foregoing, we must now decide if the appellees presented sufficient evidence to show the public openly and continuously used the roadway in question for seven years or more, and if the facts and circumstances surrounding the usage were such that Zunamon and Chicago Mill knew or should have known it was adverse. We conclude the evidence before the trial court was sufficient to support its decision that the road became a public easement by prescription.

There was testimony that the road was in existence as early as 1913 or 1914 and was used by people coming out from a steamboat landing located on the Arkansas River. Appellee, Dobson, testified that this road was travelled by wagons, buggies and automobiles as long as sixty-six years ago. There was evidence offered by several witnesses that the roadway had been maintained by private citizens as well as the county, which included grading and gravelling the road. There were maps introduced as exhibits which clearly show a discernable road which spans over a one and one-quarter mile area and is approximately thirty feet in width. In the case of *Burdess* v. *Arkansas Power & Light*, 268 Ark. 147, 597 S.W. 2d 828 (1980), cited and relied upon by appellants, the court denied a public easement existed in part because there was no discernable roadway and the passageway sought was no more than an unimproved timber trail. The facts before us are clearly distinguishable from those in *Burdess*. Finally, witnesses called by appellants and appellees at this action agreed that the roadway was used by log hauling concerns, fishermen, hunters and campers.

The facts and circumstances shown by the foregoing evidence and testimony alone is sufficient to establish the appellees' right to a public easement over the roadway in question. Additionally, however, it is the testimony of the appellants' witnesses which makes our decision conclusive on the issue before us. Oscar Locher, age 69, and manager of

Chicago Mill since 1929, testified he was aware of private logging concerns and other people using the road for fifty years, and there was never an attempt to prevent people from using it until March, 1979. Mr. Wilkins and Mr. Beatty, members of the Melinda Bar Hunting Club, testified they were familiar with the road for thirty-two years and seventeen years, respectively, and they, too, were aware of the public's use of the road. Both Wilkins and Beatty agreed that their Club had placed two "Keep Out" signs on trees on each side of the road for a five year period, but again no action was taken until 1979 to bar the public from using the road. In summary, although several representatives of the appellants knew and were aware of the public's open and continued use of the roadway for at least fifty years, the appellants never denied access to anyone. The long length of time that the road was used by many people is, in itself, pertinent evidence of adverse use. *Weigel* v. *Cooper*, 245 Ark. 912, 436 S.W. 2d 85 (1969).

The appellants' second point raised on appeal is that the Chancellor erred in granting public prescription rights to a thirty foot strip of land from the road to the river, two hundred yards south of the Missouri-Pacific Railroad bridge. Much of the evidence we have already reviewed above involves testimony of witnesses who related that the road was used by the public to get to the Arkansas River.

Consistent with our decision that the one and one-quarter mile long, thirty foot wide roadway is a public easement, we also hold that the evidence in the record is sufficient to support the Chancellor's grant of the additional thirty foot passageway from the road to the Arkansas River. Appellants direct our attention to the case of *Clarke* v. *Montgomery County*, 268 Ark. 181, 597 S.W. 2d 96 (Ark. App. 1980), and argue that there is no authority for extending public prescription rights to a parking area or "landing" for the entry of boats into the Arkansas River. Our Court, in *Clarke*, held only that prescription easement rights are limited to public thoroughfares used for travel purposes, and there was no authority for extending public prescription rights to a parking area used sporadically by members of the public. In the case at bar, the Chancellor granted a passageway from the road to the

Arkansas River, all of which was consistent with evidence which was before the trial court. This passageway was merely an extension of the prescriptive roadway used by the public to gain access to the river. Such use was established for travel and other purposes as early as 1913.

In accordance with the conclusions we reached above, the trial court's decree must be affirmed.

Affirmed.

CORBIN, J., not participating.