Esther Jane CHAPIN and Jake STUCKEY as Trustee
under the Will of Sam CHAPIN
*v.* J. A. TALBOT and Juanita TALBOT

CA 84-60                                        679 S.W.2d 219

Court of Appeals of Arkansas
Division I
Opinion delivered November 21, 1984

*Frierson, Walker, Snellgrove & Laser,* by: *G. D. Walker,* for appellants.

*L. D. Gibson,* for appellees.

TOM GLAZE, Judge. The appellants appeal from the chancellor's decree finding easements for two roads over appellants' property, one prescriptive easement in favor of the general public and one in favor of the appellees. For reversal, appellants contend that the appellees have no record title to the road and that the evidence did not establish a prescriptive easement on either (a) the north-south road or (b) the east-west road. We affirm the chancellor's decision.

The facts presented at the hearing below showed that the appellants and the appellees own adjoining rural property on which the two disputed roads are located. A north-south road runs between appellants' and appellees' property and has existed for over forty years on the site of what was originally a "dummy line" railroad. The road originally provided access to four tenant houses that were removed from appellants' property in the 1960s. Since the houses were removed, both appellants and appellees have continued to use the road for moving farming equipment to and from their fields. Appellants fenced and closed the north-south road in 1982.

An east-west road runs through appellants' property and is the northern boundary of appellees' land. If one begins at the northeast corner of appellees' property heading east, he drives through appellants' property over the road to reach U. S. Highway 63. When tenants lived in the above-mentioned houses, the east-west road was used by school buses and by mailmen serving those families. In 1978, iron bar gates were erected across this road by Judd Chapin, appellant Esther Jane Chapin's grandson. The gates were opened from time to time until 1980, when they were closed and locked.

The appellees brought their action after appellant blocked and denied appellees the use of these two roads. They asked that these obstructions be removed and that damages be awarded. The chancellor found that the north-south road is a private road with an easement acquired by prescription by appellees and their predecessors in title and that the east-west road is a public road with an easement acquired by prescription. He also found the easements to run with the land.

Appellants' first point for reversal is that the appellees have no record title to the north-south road. Although appellees' complaint included an allegation that they had claimed to the center of that road as their eastern boundary since 1957 and were therefore claiming under color of title, the trial court did not make a finding in that regard. The trial court's findings that prescriptive easements were estab-

lished required no finding that appellees had record title to the property in question. Having record title is not a requisite of one's acquiring a prescriptive easement; therefore, we find appellants' first point inapposite.

Appellants' second point is that the evidence did not establish a prescriptive easement over the north-south road. Appellants contend that appellees never asserted a right to use the north-south road, but rather used the road with the permission of appellants and their predecessor in title. Appellants correctly point out the following rule from *Craig* v. *O'Bryan,* 227 Ark. 681, 301 S.W.2d 18 (1957):

> "[W]hile a way may be acquired by use or prescription by one person over the uninclosed land of another, mere use of the way for the required time is not, as a general rule, sufficient to give rise to the presumption of a grant. Hence, generally, some circumstance or act, in addition to, or in connection with, the use of the way, tending to indicate that the use of the way was not merely permissive, is required to establish a right by prescription."

*Craig* v. *O'Bryan,* at 685, 301 S.W.2d at 21 (quoting *LeCroy* v. *Sigman,* 209 Ark. 469, 191 S.W.2d 461 (1945)).

As we pointed out in *Burdess* v. *Arkansas Power & Light Co.,* 268 Ark. 901, 597 S.W.2d 828 (Ark. App. 1980), before permissive use can ripen into the adverse use necessary to create a prescriptive easement, some overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim is being exerted. We pointed out in *Zunamon* v. *Jones,* 271 Ark. 789, 610 S.W.2d 286 (Ark. App. 1981), that if usage of a passageway over land, whether it began by permission or otherwise, continues for seven years after the facts and circumstances of the usage are such that the landowner would be presumed to know the usage was adverse, then the usage ripens into an absolute right. *Id.* at 791, 610 S.W.2d at 287-88 (citing *Fullenwider* v. *Kitchens,* 223 Ark. 442, 266 S.W.2d 281 (1954)).

The testimony below indicated that in addition to the long passage of time—nearly fifty years—that the road has been used by appellees and their predecessors in title, the appellees have also worked to repair and maintain the road. There was testimony that appellees had neither sought permission nor been denied the right to use the north-south road and that their use was well known by appellants. Appellant Esther Chapin testified that she had never been notified that anyone claimed a right to use the road. She also denied knowledge of the extent of the use that appellees asserted. However, other evidence was to the contrary and indicated a use of a duration and extent that ought to have put appellants on notice. We believe the testimony supported the chancellor's finding that a prescriptive easement in favor of the appellees exists over the north-south road.

Appellants' last point is that the evidence did not establish a prescriptive easement in the public to the east-west road. The east-west road undisputedly lies across property owned entirely by the appellants; the road provided access to the tenant houses on appellants' property so long as they were there. In addition, school buses and mail trucks used the road to get to and from the tenants' houses. Testimony also indicated that other members of the public used the east-west road when traveling in the area. Examples of testimony upon which the chancellor could have relied in making his findings included the following:

> *John Turner, Jr.,* testified that he had farmed all of the appellees' property from 1939 to 1957 and that he had used the east-west road without permission and considered it a public road when he lived there. He said that he had seen county road graders working on the road many times.

> *Alfred Burgess* testified that he had lived in the area since 1917, and had used the road without permission to travel to town and to his brother's house. He stated that the road was used by the public, both local people and those just traveling through the area.

> *Walter Larison* testified that he "figured" the east-west

road was a public road; it was used by the community as a whole. From 1972 to 1982, he worked on appellees' farm and used the road to go to Marked Tree.

*Steve Ryan,* the Poinsett County Judge, testified that although there was no recorded easement, the county map in his office showed both disputed roads as county roads for maintenance purposes and that the east-west road was graded by the county until iron bars were placed across the road.

*J. A. Talbot,* appellee, testified that he had used the east-west road without permission from the time he bought his property in 1957 until about three years before trial when the road was blocked off by the appellants.

In view of the testimony presented concerning the long-standing use of the road by members of the community, we believe the evidence supports the chancellor's finding a prescriptive easement in favor of the public on the east-west road. Applying the same rules about overcoming the presumption of permissiveness as we applied above, we fail to find that the chancellor's findings are clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a).

Affirmed.

CRACRAFT, C.J., and MAYFIELD, J., agree.