MANITOWOC REMANUFACTURING, INC. *v.* William C. VOCQUE and Debra F. Vocque

91-72                                                819 S.W.2d 275

Supreme Court of Arkansas
Opinion delivered November 18, 1991

*Baxter, Eisle, Duncan, & Jensen,* by: *Ray Baxter,* for appellant.

*Laser, Sharp, Mayes, Bufford, & Watts, P.A.,* by: *Kevin Staten,* for appellees.

DAVID NEWBERN, Justice. This case presents the question whether a chancery court has jurisdiction of an action to enjoin a nuisance, and if so, whether a claim upon which relief could be granted was stated. We hold that the Court has jurisdiction of the subject matter and that a claim upon which relief could be granted was stated. We reverse the Chancellor's decision that the Court lacked jurisdiction.

The complaint of the appellant, Manitowoc Remanufacturing, Inc., alleged that in the early 1920s, the Rock Island Railroad acquired an easement across land presently owned by the appellees, William and Debra Vocque. The purpose of this easement was to place railroad tracks. During the time the easement was

used by Rock Island, it was located on an elevated dump. Rock Island Railroad later declared bankruptcy, and the easement was abandoned.

Prior to the abandonment, Reynolds Metal purchased the property subject to the easement and established a mining operation on the property. Hurricane Creek surrounded the operation, and in the 1940s, Reynolds built dikes to contain the creek's floodwaters and thus protect the business. These dikes and the elevated railroad dump served as a dam to keep the high waters of Hurricane Creek from flooding underground mining operations conducted south of the easement. Reynolds later built an extension of the dam in order to channel Hurricane Creek away from its original course and away from the mining operation.

In 1987, Reynolds sold the property which had been the location of the mining operation to the appellant, Manitowoc Remanufacturing, Inc. Manitowoc operates a manufacturing business on its portion of the former Reynolds property. Reynolds later sold to the Vocques the portion of the tract on which the elevated railroad dump continued to serve as a dam preventing Hurricane Creek from flooding the Manitowoc property.

Manitowoc's claim is that the Vocques removed gravel from the dump creating a gap which caused the creek to flood the Manitowoc property, temporarily shutting down its operation. Manitowoc claims a prescriptive right in the continued maintenance of the easement as a flood control device and that the Vocques' action in removing the gravel constituted a nuisance. Manitowoc requested a temporary restraining order and a permanent injunction prohibiting the Vocques from altering the course of Hurricane Creek by removing gravel from the dam. Manitowoc also claimed as damages lost profits, costs, and attorney's fees.

In the motion to dismiss, the Vocques argued a landowner has no affirmative duty to maintain an artificial condition regulating the flow of water onto an adjacent landowner's property. The Chancellor dismissed the suit without prejudice, but the order stated only that he "lacked equitable jurisdiction."

The record before us consists only of the pleadings, the

motion to dismiss, a response to the motion, briefs to the Chancellor from both sides arguing the issue whether a cause of action has been stated, an affidavit attached to Manitowoc's response by a former Reynolds employee purporting to verify the history stated in the complaint, and the Chancellor's order stating the Court lacked jurisdiction.

If possible, we decide chancery cases without remand. The record in this instance does not permit us to resolve this case altogether. We can, however, decide, in addition to the jurisdiction question, that Manitowoc stated a cause of action.

### 1. Jurisdiction

■ An injunction is an equitable remedy of which a chancery court has jurisdiction. *Fort Smith Symphony Orchestra, Inc.* v. *Fort Smith Symphony Association, Inc.*, 285 Ark. 284, 686 S.W.2d 418 (1985); *McKenzie* v. *Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973). A private nuisance is conduct on land which disturbs the quiet use and enjoyment of nearby property, and if injury to nearby property is certain and substantial, an injunction may issue. *Arkansas Reliance Guidance Foundation* v. *Needler*, 252 Ark. 194, 477 S.W.2d 821 (1972); *Clark* v. *Hunt*, 192 Ark. 865, 95 S.W.2d 558 (1936). It was error to hold the Chancery Court lacked jurisdiction.

### 2. Cause of action

### a. Prescription

■■ Manitowoc claims a prescriptive right in the continuance of the dam for its benefit. One asserting an easement by prescription must show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Teague* v. *Raines*, 270 Ark. 412, 605 S.W.2d 485 (1980). Some circumstance or act in addition to, or in connection with, the use which indicates that the use was not merely permissive is required to establish a right by prescription. *Craig* v. *O'Bryan*, 227 Ark. 681, 301 S.W.2d 18 (1957). Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Stone* v. *Halliburton*, 244 Ark. 392, 425 S.W.2d 235 (1968). Mere permissive use of an easement cannot ripen into an

adverse claim without clear action placing the owner on notice. *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S.W.2d 281 (1954). If prescription is to be the basis of Manitowoc's claim, one of these bases must be found.

### b. Reliance

In its brief to the Chancellor Manitowoc argued it had stated a claim upon which relief could be granted because it had a right to rely on the continued existence of the dump or dam citing, among many other cases, *Mitchell Drainage Dist.* v. *Farmers Irr. Dist.*, 256 N.W. 15 (Neb. 1934), and *Greisinger* v. *Klinhart*, 282 S.W. 473 (Mo. App. 1926). Manitowoc quoted from the *Greisinger* case a passage dealing with reciprocal easements created with respect to an artificial lake and stating that subsequent grantees from a common owner cannot alter the artificial condition absent "mutual agreement or joint action."

■ The general rule is that an owner of property may create an artificial condition upon a portion of the owner's land, benefitting another portion of the land, causing the condition to be regarded as the natural state of the property by subsequent grantees purchasing the property with notice of the condition. 3 Farnham, *The Law of Waters and Water Rights*, § 830 (1904). If an owner of land artificially creates a condition favorable to one portion of his property and then sells that portion, the grantee takes it with the right to have the condition continued. 3 Farnham, *supra*, § 833.

■ When an owner uses a part of his or her land for the benefit of another part, a quasi-easement has been held to exist. The part of the land benefitted has been referred to as the quasi-dominant tenement, and the land utilized for the benefit of the other property has been referred to as the quasi-servient tenement. When the owner of the land subject to a quasi-easement in favor of another part conveys the quasi-dominant tenement, an easement corresponding to the pre-existing quasi-easement is vested in the grantee of the land. The quasi-easement must be of an apparent, continuous, and necessary character. 3 Tiffany, *The Law of Real Property* § 781 (1920). These easements have been referred to as implied easements corresponding to pre-existing quasi-easements.

The doctrine originated in *Lampman* v. *Milks*, 21 N.Y. 505

(1860). A landowner diverted a stream flowing across his property through an artificial channel to benefit another portion of the property. The owner conveyed the land benefitted by the condition to the plaintiff and shortly thereafter conveyed the remaining property to the defendant. Four years later, the defendant attempted to eliminate the artificial channel which would have resulted in flooding the plaintiff's property.

■ The Court stated the general rule that no easement exists if there is unity of ownership. Once a severance occurs by a sale of a portion of the property, easements or servitudes are created corresponding to the benefits and burdens existing at the time of the sale. When the owner of an estate sells a portion of it, the purchaser takes the land subject to the benefits and burdens appearing at the time of the sale. If a burden is imposed upon the portion sold, the purchaser takes subject to the burden provided it was open and visible. Specifically, the Court held "[t]he parties are presumed to contract in reference to the condition of the property at the time of the sale and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts."

■ An implied easement corresponding to a pre-existing quasi-easement is similar to an implied easement by necessity. This Court has recognized that when, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part, and at the time of a later severance of ownership the servitude is in use and is reasonably necessary for the enjoyment of the part of the property favored by the servitude, the servitude survives the severance and becomes an easement by implication. The servitude must be obvious, apparently permanent, and reasonably necessary for the enjoyment of the property. "Necessary" has been held to mean there could be no other reasonable mode of enjoying the dominant tenement without the easement. *Kennedy* v. *Papp*, 294 Ark. 88, 741 S.W.2d 625 (1987); *Greasy Slough Outing Club, Inc.* v. *Amick*, 224 Ark. 330, 274 S.W.2d 63 (1954).

■ The facts recited in Manitowoc's complaint stated a claim upon which relief may be granted. As the Chancery Court had jurisdiction of the claim, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GLAZE, J., not participating.