Francis CARSON, Denise Carson, and Scott Carson *v.* COUNTY of DREW, Eddie Eubanks, David T. Hyatt, and Billy D. Hickam

02-853                                                    128 S.W.3d 423

Supreme Court of Arkansas
Opinion delivered November 6, 2003

622

*R. Victor Harper;* and *Gordon, Caruth & VIrden, P.L.C.,* by: *Jeannie L. Denniston,* for appellants.

*Gibson & Hashem, P.L.C.,* by: *C.G. Gibson III,* for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellants, Francis and Denise Carson, appeal a decree entered by the Drew County Circuit Court finding that a public prescriptive easement exists in a roadway, turnaround, landing, and parking area, also known as Gee's Landing, on land owned by the Carsons and enjoining the landowners from blocking or interfering with the public's use of the easement. On appeal, the Carsons argue that the trial court erred when it decreed that the public has acquired a right of unrestricted use of their property. This case was certified to us from the Arkansas Court of Appeals; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(d). We affirm.

This case involves access to a roadway, turnaround, landing, and parking area on and around the Saline River in Drew County, Arkansas. The Carsons received title from Denise Carson's father in 1999; however, the land in question had been a part of the Carson family since 1901. Prior to the Carson's use of the land, members of the public used the road in question, along with the landing and adjacent turnaround and parking areas, for many decades, unhindered by the predecessor landowners. The road was maintained by the County of Drew and for a brief period of time by the State Highway Department. The road is visible on road maps.

Shortly after the Carsons obtained the property, they erected a gate across a road on their property to prevent the public from trespassing, littering, and other unwanted activities. The County of Drew sought an injunction requiring the Carsons to open or remove the gate. A hearing was held on March 22, 2000, and the trial judge issued a temporary restraining order, requiring the Carsons to open the road to the public.

The Carsons left the road open but attempted to restrict access of the public to the remainder of their property by erecting fences in the area that borders the Saline River. The County of Drew sought another order from the trial court, requiring the Carsons to remove the fencing. A hearing was held on May 7, 2000, from which the judge issued an order directing the Carsons to remove their fences.

Hearings were held on August 15 and August 30, 2001, for final disposition of the issues. The trial judge issued findings and a decree was entered, wherein the trial judge permanently enjoined the Carsons from interfering with the use of the roadway, turnaround, landing, and parking area. On appeal, the Carsons argue that the trial court erred when it decreed that the public had acquired a right of unrestricted use of their property.

We review chancery cases de novo on the record, and we will not reverse a finding of fact by the chancery court unless it is clearly erroneous. *McWhorter v. McWhorter*, 351 Ark. 622, 97 S.W.3d 408 (2003); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). In reviewing a chancery court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* Disputed facts and determinations of witness cred-

ibility are within the province of the fact-finder. *Id.* A finding is clearly erroneous, when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Owners Assoc. of Foxcroft Woods v. Foxglen,* 346 Ark. 354, 57 S.W.3d 187 (2001); *RAD-Razorback Ltd. Partnership v. B.G. Coney Co.,* 289 Ark. 550, 713 S.W.2d 462 (1986). It is this court's duty to reverse if its own review of the record is in marked disagreement with the chancery court's findings. *Dopp v. Sugarloaf Mining Co.,* 288 Ark. 18, 702 S.W.2d 393 (1986) (citing *Rose v. Dunn,* 284 Ark. 42, 679 S.W.2d 180 (1984); *Walt Bennett Ford v. Pulaski County Special School District,* 274 Ark. 208, 624 S.W.2d 426 (1981)).

■■ A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. *Owners Assoc. Of Foxcroft Woods, supra; See* Paul Jones Jr., *Arkansas Titles to Real Property* §§ 714, 1499, at 443, 906-09 (1935 & Supp. 1959); *Neyland v. Hunter,* 282 Ark. 323, 668 S.W.2d 530 (1984) ("Prescription is the acquisition of title to a property right which is neither tangible nor visible (incorporeal hereditament) by an adverse user as distinguished from the acquisition of title to the land itself (corporeal hereditament) by adverse possession."). Like adverse possession, "prescriptive easements . . . are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." 25 Am. Jur. 2d *Easements and Licenses* § 45 (1996); *Potts v. Burnette,* 301 N.C. 663, 273 S.E.2d 285 (1981). In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Manitowoc Remanufacturing, Inc. v. Vocque,* 307 Ark. 271, 819 S.W.2d 275 (1991); *Neyland v. Hunter, supra; Teague v. Raines,* 270 Ark. 412, 605 S.W.2d 485 (1980). This court has said that the statutory period of seven years for adverse possession applies to prescriptive easements. *Neyland v. Hunter, supra; Duty v. Vinson,* 228 Ark. 617, 309 S.W.2d 318 (1958); *Brundidge v. O'Neal,* 213 Ark. 213, 210 S.W.2d 305 (1948). That statutory period for adverse possession is set out in Ark. Code Ann. § 18-61-101 (1987). *See also* Ark. Code Ann. § 18-11-106 (Supp. 1999) (enacted as Act 776 of 1995).

■■ Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Owners Assoc. of Foxcroft Woods, supra; Stone v. Halliburton,* 244 Ark. 392, 425 S.W.2d 325 (1968). Mere permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. *Manitowoc Remanufacturing, Inc. v. Vocque, supra; Fullenwider v. Kitchens,* 223 Ark. 442, 266 S.W.2d 281 (1954). Some circumstance or act in addition to, or in connection with, the use which indicates that the use was not merely permissive is required to establish a right by prescription. *Craig v. O'Bryan,* 227 Ark. 681, 301 S.W.2d 18 (1957). The determination of whether a use is adverse or permissive is a fact question, and former decisions are rarely controlling on this factual issue. *Duty v. Vinson, supra; St. Louis Southwestern Ry. Co. v. Wallace,* 217 Ark. 278, 229 S.W.2d 659 (1950); *Brundidge v. O'Neal, supra.* The plaintiff bears the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question. *Owners Assoc. Of Foxcroft Woods; Duty v. Vinson, supra; Brundidge v. O'Neal, supra; Stone v. Halliburton, supra.*

■ In *Fullenwider v. Kitchens,* this court stated:

> A consideration of the many opinions of this court regarding the acquisition of a right-of-way over lands makes it clear, in our opinion, that no real conflict exists. All our opinions are in harmony on one point, viz.: Where there is usage of a passageway over land, whether it began by permission or otherwise, it that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right.

*Fullenwider v. Kitchens,* 223 Ark. 442, 266 S.W.2d 281 (1954). The use of wild, unenclosed, and unimproved land is presumed to be permissive, until the persons using the land for passage, by their open and notorious conduct, demonstrate to the owner that they are claiming a right of passage. *Stone v. Halliburton,* 244 Ark. 392, 425 S.W.2d 325 (1968). If the use is continuous and unrestricted for the statutory

period of limitations, the rights become permanent and irrevocable. *Robb & Rowly Theaters v. Arnold*, 200 Ark. 110, 138 S.W.2d 773 (1940).

Turning to the case at hand, Floyd Fulbright, the former Maintenance Superintendent for Drew County with the Arkansas Highway Department, testified that the road was in the state highway system from 1977 until 1984. During that time, the Highway Department maintained the roadway to the Saline River. Marion Rawls, a Drew County Road Department employee on and off from 1956 through 1984, maintained that the roadway led to the bank of the Saline River and had used the turnaround area for road graders. Eddie Eubanks testified that he had used the area for fifty-five to sixty years, uninterrupted. Billy D. Hickam testified that he used the roadway since he was a child and had seen other people using the roadway.

Leo McCarty, Denise Caron's father, made no effort to close the road or to deny public access before he sold the property to his daughter in 1999. The Carsons have simply not rebutted the proof that the public's use of the road, ramp, turnaround, and parking area was sufficiently adverse to establish prescriptive rights. In order for the owner to preserve his right to revoke the use beyond the period of limitations, he must maintain his control over the way by some overt act showing the use continued as a permissive one. *Manitowoc Remanufacturing, Inc., supra.* The determination of whether the use of a roadway is adverse or permissive is a question of fact, and a trial court's finding with respect to the existence of a prescriptive easement will not be reversed by this court unless it is clearly erroneous. *Gazaway v. Pugh*, 69 Ark. App. 297, 12 S.W.3d 662 (2000).

The trial court incorporated certain findings from a March 24, 2000, hearing into its March 11, 2003, findings, namely:

6. Evidence at the March 22, 2000, hearing shows that the individual Plaintiffs and the general public have had access to the Saline River, by use of the road in question, and utilized the boat ramp and landing and the parking and turnaround area for more than sixty (60) years.

10. The road, boat landing and ramp, and the parking and turn-around area are the only convenient access to that area of the Saline River by the individual Plaintiffs and the general public.

The trial court further found in the March 11, 2003, finding that the Carsons knew or should have known that the upper landing, consisting of a boat ramp, parking and turnaround area connected to the end of the county road, was being used adversely. The trial court also found that the use of the boat landing and ramp, and turnaround and parking area by the general public has been continuous for a period of more than seven years and has long ago ripened into rights adverse to the previous owners of the property and currently is adverse to the defendants.

From the foregoing, we must now decide if the appellees presented sufficient evidence to show that the public openly and continuously used the roadway in question for seven years or more, and if the facts and circumstances surrounding the usage were such that the Carsons knew or should have known it was adverse. We conclude the evidence before the trial court was sufficient to support its decision that the road became a public easement by prescription.

The trial court's finding that an easement by prescription in favor of the public existed as to the road, turnaround, parking area, and landing is more than amply supported by the evidence. Certainly, the testimony presented to the trial court demonstrated that members of the community had used Gee's Landing area in excess of the seven years required. In fact, the evidence demonstrates that the members of the public had used the property for around sixty years. Because there was an acquiescence to longtime use, it operated to put appellants on sufficient notice "of a claim of right." *Owners Assoc. of Foxcroft Woods, supra; Gazaway, supra; Zunamon, supra.* Therefore, the community's use of the property met the actions required for prescriptive easement.

The Carsons next argue that even if the property did meet the requirements for a prescriptive easement, the general public can not acquire such. The Arkansas Court of Appeals dealt with a similar issue in *Gazaway v. Pugh*, 69 Ark. App. 297, 12 S.W.3d 662 (2000). In that case, Gazaway appealed from the trial court's order finding that a "public prescriptive easement exist[ed] in a gravel road and turn-around area on land owned by Gazaway

and others and enjoining the landowners from blocking or interfering with the public's use of the easement." *Gazaway,* 69 Ark. App at 298, 12 S.W.3d at 663. At issue was the "access to a boat ramp and an area known as 'Schaeffer's Eddy' on the Little Black River near Pocahontas." *Id.* The court of appeals found:

> We find this to be a very close case because almost all of the appellees' witnesses were personally acquainted with the Gazaway family, and their testimony about their use of the roadway was not in any way inconsistent with the scope of permission that the Gazaway family at least implicitly extended to them. We also find no significance in the fact that the county graded and graveled the road; there is no dispute that the county regularly provided this service for private landowners. However, Gary Cole's testimony decisively tips the balance in favor of the appellees. His account of the sheer number of hunters and fishermen present at the eddy suggests that not all of the use was by family or friends. In *Kimmer v. Nelson,* 218 Ark. 332, 236 S.W.2d 427 (1951), the supreme court held that the original restriction in the nature of a permissive passageway across the land of another may be deemed to have been abandoned if such use is not objected to by the landowner after a long passage of time. Similarly, in *Fullenwider v. Kitchens, supra,* the supreme court applied the principle announced in *Kimmer* to uphold a lower court's finding that use of a road through wild and unimproved land for over thirty years overcame the presumption that use of the land was permissive. In the instant case, we find similar acquiescence to longtime use, and therefore we hold that the that the presumption of permissive use had been overcome.

*Gazaway,* 69 Ark. App. At 302-03, 12 S.W.3d at 666. The court of appeals also found that evidence supported the trial court's grant of a thirty-foot passageway from the road to the Arkansas River. In the case at hand, there was long-time use of the roadway, turnaround, landing, and the parking area by the public; therefore, the general public acquired a right–of–way over the area through prescriptive easement.

The Carsons also appeal the trial court's finding that the trial court's imposition of a prescriptive easement is an unconstitutional taking without compensation. However, the trial court did not rule on this issue therefore this issue is not preserved. It is well settled that to preserve arguments for appeal, even constitu-

tional ones, the appellant must obtain a ruling below. *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002).

Affirmed.

GLAZE and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. Arkansas law has been long settled that where there is a usage of a *passageway* over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right. (Emphasis added.) *See Fullenwider v. Kitchens*, 223 Ark. 442, 266 S.W.2d 281 (1954); *see also Zunamon v. Jones*, 271 Ark. 789, 610 S.W.2d 286 (Ark. App. 1981). Arkansas case law is also established that there is no authority for extending public prescription rights to a "parking area" or "landing" for the entry of boats into the Arkansas River. *Id.*, *Clarke v. Montgomery County*, 268 Ark. 942, 597 S.W.2d 96 (Ark. App. 1980).

The *Zunamon* court, citing the *Clarke* decision, recounted the rule that *prescriptive easement rights are limited to public thoroughfares used for travel purposes*, and there was no authority for extending rights to a parking area used sporadically by members of the public. Consistent with the *Clarke* holding, the *Zunamon* court ruled the evidence showed that an additional thirty-foot *roadway* was used by the public to gain access to the river. *See also, Gazaway v. Pugh*, 69 Ark. App. 297, 12 S.W.3d 662 (2000) (where hunters and fishermen sued landowner seeking both a public prescriptive easement and an injunction on the landowner from interfering with plaintiffs' use of road).

Until today's decision, Arkansas law regarding public prescriptive rights has been applied only in cases where thoroughfares, roadways, or easements for travel purposes were in issue. *None* of the cases cited by the majority opinion involves a taking of an owner's property for anything but a thoroughfare or roadway for travel purposes. The reason for failure to cite authority extending public prescriptive rights to such things as parking lots and turnarounds is best explained by the general rule relied on in the majority opinion that "prescriptive easements are not favored in

the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." *See* 25 Am. Jur. 2d *Easements and Licenses* § 45 (1996).

While I concur with the majority decision to allow a prescriptive easement for ingress and egress to the river, I disagree with that part of its decision extending an easement beyond its traditional definition of a thoroughfare. The law of prescriptive easement has been unnecessarily expanded, and the Carsons have been burdened as a result of this court's acquiescence to the taking of their property by Drew County for what has become essentially a public campground.

IMBER, J., joins this dissent.