The Honorable Stephanie Flowers State Senator
104 Main Street, Suite C Pine Bluff, Arkansas 71601
Dear Senator Flowers:
This is my opinion on your questions about public access to a lake. Your request states:
 Swan Lake, an oxbow body, is located in Jefferson County along Corner Stone Road, which is paved and a farm road that is not paved. Both roads are maintained by Jefferson County and run along the lake's bank. It is believed the land where Swan Lake is located is privately owned. There are three usable boat-launching sites for the lake. One of my constituents has used the lake for 35 years. The use of the lake is now being restricted to bank fishing only, but the constituent does not know who is restricting the usage of the lake. The Arkansas Game and Fish has advised they are not restricting the usage of this lake.
Your questions are:
 1. What is the law regarding the use of oxbow lakes in Arkansas?
 2. Can you explain private ownership versus public access in the use of oxbow lakes?
 3. Can you explain private ownership versus public access in the above situation? *Page 2 
 4. Can Swan Lake's usage be restricted to bank fishing only? If so, who can restrict the usage and who enforces it?
RESPONSE
In my opinion, the public is entitled to use any navigable body of water. Subject to exceptions in some cases, the public is not entitled to use a non-navigable body of water. A navigable body of water is public property; a non-navigable body of water is generally privately owned. The lawful possessor of a non-navigable body of water may restrict use to bank fishing only and is primarily responsible for enforcing the restriction. I state no opinion concerning navigability of or public access to Swan Lake.
Question 1 — What is the law regarding the use of oxbow lakesin Arkansas?
Public access to a body of water depends primarily on whether it is navigable:
 "If water is navigable, members of the public have the right to use the water at any point below the high-water mark." State v. Hatchie Coon Hunting Fishing Club, Inc., 98 Ark. App. 206, 223, 254 S.W.3d 11 (2007). Conversely, as a general rule, the public has no right to use a stream that is not navigable. E.g., [State v.] McIlroy, [268 Ark. 227, 234, 595 S.W.2d 659 (1980] .
Op. Att'y Gen. 2011-024 (footnote omitted).
Navigability is a question of fact. Arkansas River RightsComm'n v. Echubby Lake Hunting Club,83 Ark. App. 276, 126 S.W.3d 738 (2003); Goforth v. Wilson,208 Ark. 35, 184 S.W.2d 814 (1945). Not being charged or equipped to act as a finder of fact in connection with issuing opinions, this office has long declined to opine on whether a given body of water is navigable. E.g., Op. Att'y Gen. 2011-024, 2007-243, 92-193. I therefore do not opine on whether Swan Lake is navigable.
Your request states that your constituent has used Swan Lake for 35 years. This assertion raises the possibility that your constituent may be entitled to use Swan Lake even if it is not navigable: *Page 3 
 [I]n some circumstances a person or the public may acquire a prescriptive right to use real property. See, e.g., Meyers v. Yingling, 372 Ark. 523, 279 S.W.3d 83 (2008). Prescriptive easements usually amount to a right to use another's land for travel only. See, e.g., Cook v. Ratliff, 104 Ark. App. 335, 292 S.W.3d 839 (2009). At least one authority would limit prescriptive easements to that use. See Carson v. Drew County, 354 Ark. 621, 128 S.W.3d 423 (2003) (Glaze, J., dissenting). Others would not and do not. See, e.g., Echubby, [supra] (state's permanent flooding of land may create public prescriptive right of access to hunting and fishing area); Carson, supra (public prescriptive easement included parking area); Op. Att'y Gen. 2000-307 (facts and circumstances may result in public prescriptive easement for hunting). The existence of a prescriptive easement is a fact-intensive question. See, e.g., Carson, supra.
Op. Att'y Gen. 2010-069.
Because the existence of a prescriptive easement depends on the facts of each case, I do not opine on whether any person or the public has a right to use Swan Lake arising from a prescriptive easement.
Finally, the public may in some cases have a right to fish on a non-navigable body of water under a common-law rule:
 It is the "settled American [common law] rule that it is not a trespass for anyone to hunt upon unenclosed wild lands." Shellnut v. Arkansas Game Fish Comm'n, 222 Ark. 25, 258 S.W.2d 570 (1953) (emphasis added) (citing Bizzell v. Booker, 16 Ark. 308 (1855)). "In the early settlement of this State, there was much waste and forest land, and an abundance of all kinds of game on them. It was never considered that a person hunting upon the uninclosed [sic] lands of another was a trespasser. . . . [Owners] have the exclusive right to hunt and fish on their own lands when they are enclosed." Barboro v. Boyle, 119 Ark. 377, 384, 178 S.W. 378 (1915) (emphases added). Where a person does not own the fish in a private lake [. . .] and has not enclosed the portion of the lake's surface belonging to him or her, "it follows that . . . the public have a right to fish there in a lawful manner, as long as these waters remain so uninclosed [sic]." Medlock [v. Galbreath, 208 Ark. 681, 685, 187 S.W.2d 545 (1945] . *Page 4 
 "Enclose" does not have a precise meaning but denotes in general the presence of "barriers . . . sufficient to notify the public that the land has been appropriated, and to impart to the claim of appropriation the indication of ownership. . . ." Barboro, 119 Ark. at 385. An enclosure, then, is not something that makes it physically impossible for others to enter but something that puts others on notice not to enter. See id. Cf.
A.C.A. §§ 2-39-102, -103 (Repl. 2008) (requiring agricultural "enclosures" to have fences and defining "fence" to mean "a barrier sufficient to indicate an intent to restrict . . . ingress or egress"). The sufficiency of a particular barrier is a question of fact. See Barboro, supra.
Op. Att'y Gen. 2010-069.
By its own terms, the common-law rule affords no basis for access when the body of water is enclosed. Additionally, in my view, statutes that prohibit entry without permission on posted land will supersede the common-law rule to the extent the land is appropriately posted. See, e.g., A.C.A. §§ 5-39-305 (Repl. 2006), 18-11-403 (Repl. 2003). Your request states that "use of the lake is now being restricted to bank fishing only, but [your] constituent does not know who is restricting the usage of the lake." These statements suggest that Swan Lake may be sufficiently enclosed or posted, in which case the common-law rule will afford no basis for public access. Whether a person may fish on a lake under the common-law rule depends, in any event, on the fact question of enclosure. I therefore do not opine on the rule's applicability to Swan Lake.
Question 2 — Can you explain private ownership versus publicaccess in the use of oxbow lakes? "Determining the navigability of a stream is essentially a matter of deciding if it is public or private property." State v. McIlroy, 268 Ark. 227, 234, 595 S.W.2d 659 (1980), quoted in Nichols v. Culotches Bay Navigation Rights Comm., L.L.C., 2009 Ark. App. 365, at 7, 309 S.W.3d 218, and Echubby Lake, 83 Ark. App. at 285.
Op. Att'y Gen. 2011-024. *Page 5 
Just as public access to and use of a body of water generally depend on its navigability, so too does its ownership. If a body of water is navigable, it is publicly owned and the public has a right to use it. If it is not navigable, it is generally privately owned, and its owner, subject to exceptions like those discussed in response to your first question, may exclude others. Seegenerally Op. Att'y Gen. 2011-024 and 2010-069, and authorities cited therein.
Question 3 — Can you explain private ownership versus publicaccess in the above situation?
As stated above, ownership and public access generally depend on navigability, and navigability of any particular body of water is a question of fact on which I do not opine.
Question 4 — Can Swan Lake's usage be restricted to bankfishing only? If so, who can restrict the usage and who enforcesit?
In my opinion, if Swan Lake is not navigable, and if noright of access exists under one of the exceptions discussed in myanswer to your first question, then Swan Lake's lawful possessor, such as an owner or lessee, may exclude the public from the lake entirely. See generally Op. Att'y Gen. 2011-024 and 2010-069, and authorities cited therein. A person admitted to a lake to fish with the possessor's consent likely would be a licensee, i.e., one who goes for his own purposes onto another's premises with the other's consent. See, e.g., Heigle v.Miller, 332 Ark. 315, 965 S.W.2d 116 (1998). A licensee's privilege to be on the premises arises from the possessor's consent.Coleman v. United Fence Co.,282 Ark. 344, 668 S.W.2d 536 (1984). The license is generally terminable at the possessor's will. Restatement (First) of Property § 519 (1944). If the possessor may terminate the license for no reason at all, it follows that the possessor may terminate the license if a condition of its grant — such as a restriction to bank fishing only — is not met.
In my opinion, it will be primarily up to Swan Lake's possessor to enforce the restriction, either through lawful self-help or, possibly, through civil proceedings (exceeding the scope of consent to enter land can constitute the tort of trespass, 87 C.J.S.Trespass § 9 (2010)). *Page 6 
Certain criminal sanctions generally apply to persons entering real property where complete exclusion is intended.See, e.g., A.C.A. §§ 5-39-203 (Repl. 2006) (criminal trespass),5-39-304 (Repl. 2006) (criminal trespass after warning),5-39-305 (criminal trespass on posted premises), and18-11-403 (unlawful entry on posted premises). Those sanctions generally do not appear to apply to persons exceeding the conditions of entry on land to which they have been conditionally admitted.[1] But, as noted above, exceeding the scope of consent to enter land can constitute the tort of trespass. And "[a] person commits criminal trespass if he or she purposely enters or remains unlawfully in or upon . . . [t]he premises of another person." A.C.A. § 5-39-203(a) (emphases added). One might argue that, it being unlawful to commit the tort of trespass, a person entering by boat on a lake having a bank-fishing restriction is guilty of criminal trespass. A law enforcement officer or prosecuting attorney convinced by such an argument could charge a person with criminal trespass. Success of prosecution likely would depend on the facts of the particular case.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL
Attorney General
DM:JMB/cyh
[1] One might argue that a license to enter upon a lake bank to fish does not constitute consent to enter upon the surface of the lake itself. Certainly one need not come in bodily contact with a lake's surface to order to fish from its bank. It seems more likely, however, that the possessor's consenting to a person's fishing from the bank would be held to constitute a conditional license to enter upon the lake itself, because instrumentalities in the licensee's control — bait or lure, and a line — will necessarily make contact with the water. An entry upon land by instrument alone, not involving bodily entry, can still constitute trespass. 87 C.J.S.Trespass § 9 (2010). *Page 1