Clarence B. BURDESS, Plaintiff,

v.

UNITED STATES of America and Colonel Dale K. Randels, as Commander of the Little Rock District of the United States Army Corps of Engineers, Defendants.

No. PB-C-80-92.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Dec. 3, 1982.

E.W. Brockman, Jr., C. Mac Norton, Pine Bluff, Ark., for plaintiff.

George W. Proctor, U.S. Atty., Walter G. Riddick, Asst. U.S. Atty., Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

This matter was tried to the Court on September 13, 1982. At the conclusion of trial, the Court reached the tentative conclusion that the weight of the evidence appeared to be in favor of the plaintiff. Nevertheless, the parties were asked to submit supplemental briefs to further augment the record, particularly with respect to the legal issues presented in this case. Having reviewed those supplemental materials, the Court now finds for the plaintiff. The Court reaffirms and adopts the findings of fact and conclusions of law made from the bench, and to the extent they may conflict with the findings made herein, this Memorandum will control.

This case concerns a landowner's right of access to his remaining land over lands which he once owned but which are now owned by the United States as a result of a condemnation procedure. The plaintiff, Mr. Burdess, owned a tract of land, approximately 150 acres in area and bordering the Arkansas River. For simplicity's sake, it is easiest to visualize the original Burdess land as being L-shaped.

In 1966, the Army Corps of Engineers acquired by condemnation approximately nine acres of the plaintiff's land for use in the construction of Lock and Dam No. 5 on the Arkansas River. That tract of land, known as Parcel No. 103, was taken from the "heel" portion of the L-shaped property. In April of 1974, the corps condemned a second tract of land of approximately 18 acres, known as Parcel No. 135, in order to further develop the dam site into a recreational area. That tract was adjacent to Parcel No. 103, and together the parcels constituted the lower horizontal half of the "foot" of the original L-shaped property.

The plaintiff contested the condemnation of Parcel No. 135 for a number of reasons, including the amount of compensation offered by the Corps. The parties negotiated over the disputed matters until September 8, 1976, at which time the Corps mailed to the plaintiff its standard stipulation form, believing that an agreement between the parties had been reached. About one week later the plaintiff sent to the Corps a signed stipulation that was substantially similar to the form the Corps had sent, but which included a paragraph expressly reserving to the plaintiff a right-of-way to the remainder of his property through Parcel No. 135. The Corps refused to accept the plaintiff's stipulation for settlement. The plaintiff then sought and received from the district court judge an order permitting him to file an amended answer and counterclaim in the condemnation suit in order to receive a judicial determination on the matter of access to his remainder.

Further negotiations followed between the parties, and on October 4, 1976, the

plaintiff tendered to the Corps a signed stipulation of agreement, which did not contain any express reference to reserving a right of access for the plaintiff. Judgment was had on the stipulation on December 13, 1976, and a check for $20,032.89 was issued to the plaintiff.

On January 3, 1977, the plaintiff notified the Corps that he was refusing to cash the check. Apparently the Corps had allowed the plaintiff to travel over Parcel No. 135 to reach his remainder up to that point, at which time the Corps barricaded the roadway running through Parcel No. 135. Again the plaintiff and the Corps entered into negotiations regarding an access route, but to no avail. Consequently, Mr. Burdess filed a motion to have the December 1976 judgment set aside. He claimed that the Corps had made an oral promise to him that he would be able to travel over Parcel No. 135 to reach his remaining land as long as no heavy traffic was involved (such as logging trucks). He also claimed that the stipulation he signed was not a contract and could not be enforced as such.

The Corps argued that the stipulation was a contract and therefore binding on the plaintiff. It also argued that the plaintiff had access to his land by way of alternate routes. The Corps further contended that the plaintiff relinquished his right of access with respect to Parcel No. 135 in return for the monetary consideration he received for the parcel.

On June 12, 1980, Judge Harris, of the federal district court, denied the motion to set aside the judgment. Judge Harris recognized that the plaintiff and the Corps had been involved in many negotiations over the right-of-way issue for a substantial period of time. The judge also took notice that the plaintiff had filed the instant suit against the Corps for a right-of-way and expressly ruled that the resolution of the right-of-access issue could best be determined in this suit. He concluded that to set aside the condemnation would be an improper procedural method to resolve the right-of-way issue because the Corps had already substantially improved Parcel No. 135. The suit for a right-of-way is now before this Court.

Before addressing the merits of the present case, there are some preliminary matters which this Court must address. The first is the question of jurisdiction.

■ The case is essentially one to quiet title to land with respect to an easement of access. Subject matter jurisdiction is therefore properly had pursuant to 28 U.S.C. 1346(f), which encompasses actions brought against the United States to quiet title to land pursuant to 28 U.S.C. § 2409a. Although the latter statute strictly forbids any claim of adverse possession from being brought against the government (28 U.S.C. § 2409a(g)), the case law and legislative history clearly support the proposition that a claim for "a right-of-way, easement, implied easement of necessity or other 'estate less than a fee simple' may properly be the subject of quiet title action against the United States." *City of Denver v. Bergland*, 517 F.Supp. 155 (D.Col.1981) (although the court there found insufficient evidence for an easement by necessity). *See also Montana Wilderness Association v. United States*, 496 F.Supp. 880 (D.Mont.1980), aff'd in part, remanded on other grounds, 655 F.2d 951 (9th Cir.1981), *cert. den.*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

Other courts have reached the same conclusion by way of analyzing the legislative history of the statutes.

> The legislative history of 28 U.S.C. § 2409a indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action. The House Report states: "The quieting of title where the plaintiff claims an estate less than a fee simple— an easement or the title to minerals—is likewise included in the terms of the proposed statute." H.R.Rep. No. 92–1559, 92d Cong., 2d Sess. reprinted in [1972] U.S.Code Cong. & Admin.News 4552.

*Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir.1978).

While the grant of subject matter jurisdiction found in section 1346(f) refers to

actions under section 2409a as "quiet title" actions, we do not think Congress meant to restrict the jurisdiction of the district courts to actions which conform strictly with the common law action to quiet title, with all its trappings. Section 2109a, which was enacted contemporaneously with section 1346(f), waives sovereign immunity in all suits to "adjudicate a disputed title to real property." The legislative history of section 2409a also indicates that Congress meant to permit actions which may not have been properly labeled as actions to quiet title at common law. The statutory language and legislative history of section 2409a convinces us that the lower court had jurisdiction to adjudicate this claim under 28 U.S.C. § 1346(f) (1976).

*Prater v. United States,* 612 F.2d 157, 159 (5th Cir.1980) (footnote omitted).

The Attorney General explained that actions to quiet title contemplated by the draft [of section 2409a] were broader than those allowed under English bills *quia timet.* The draft was intended to authorize suits even when the United States held possession.

*Fulcher v. United States,* 632 F.2d 278, 283 (4th Cir.1980) (footnote omitted).

Although the plaintiff's original pleadings in this case for a right-of-way were couched in terms of "adverse possession" against the government, it is clear, and was made clearer at trial, that the plaintiff's theory is one of easement by necessity or implication. That being the claim, the Court finds that it has jurisdiction over the matter.

The government also claims that the twelve-year statute of limitations period on quiet title disputes bars any action from being taken in this case. Apparently, the government misinterprets the plaintiff's claim, believing that the parcel over which the plaintiff wishes to obtain an easement is Parcel No. 103, which was acquired in 1965. The record is clear, however, that plaintiff wants a right-of-way over Parcel No. 135 which was acquired in 1976. The suit, therefore, has been brought well within the applicable period.

The final procedural claim made by the government is that this suit is barred under the doctrine of res judicata because the matter was previously litigated in the condemnation suit before Judge Harris. The government is in error on this point because the record is clear that Judge Harris expressly refused to make any findings of fact or conclusions of law on this issue because he believed the issue could better be resolved in the present suit.

Having disposed of the procedural matters at issue in this case, the Court is brought to the merits. The case is one that turns on its facts, for the law is clear that an easement by necessity or implication can be had against the United States under the proper circumstances. After addressing the issue at length, the court in the *Montana Wilderness Ass'n* case concluded that:

> Neither the case law on the issue nor the reasons set forth by plaintiffs convince this court that an easement by necessity cannot be asserted against the government. Whether or not the easement actually exists is the next inquiry.

*Id.* at 885. *See also* the discussion *supra.*

The issues before this Court are two: (1) what must the plaintiff prove in order to establish his right to an easement by necessity or implication against the government, and (2) do the facts of this case show that the plaintiff has met his burden?

With respect to the first issue, the Court recognizes that there is some distinction between an easement by necessity and an easement by implication. The court in the *Montana Wilderness Ass'n* case, relying on the general principles of common law, found three prerequisites to be met before an easement by necessity could be had against the United States.

> There are three prerequisites to the creation of an easement by necessity. First, the titles to the two tracts in question must have been held by one person. Second, the unity of title must have been severed by a conveyance of one of the tracts. Third, the easement must be nec-

**650**

essary in order for the owner of the dominant tenement to use his land. This necessity must exist both at the time of the severance of title and at the time of exercise of the easement.

*Id.* (footnote omitted). The State of Arkansas adopts this common law approach. *See Brandenburg v. Brooks,* 264 Ark. 939, 576 S.W.2d 196 (1979). In the *Brandenburg* case the Arkansas Supreme Court also addressed the issue of the degree of necessity required before a way of necessity could be implied. The court held that absolute necessity was not required, but that "a way of necessity must be more than one of mere convenience." *Id.* at 940, 576 S.W.2d at 196.

As opposed to an easement by necessity, which theoretically allows for a route of access where one previously did not exist, an easement by implication rests on the theory that a route of access was in existence at the time of the severance of a single parcel of land. The precise elements to be proved by the plaintiff were set out in *United States v. Thompson,* 272 F.Supp. 774, 784–785 (E.D.Ark.1967), *aff'd,* 408 F.2d 1075 (1969) (adopting the Arkansas rule as set out in *Greasy Slough Outing Club v. Amick,* 224 Ark. 330, 274 S.W.2d 63 (1954)).

Where, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part, and where at the time of a later severance of ownership the servitude is in use and is reasonably necessary for the enjoyment of that part of the property favored by the servitude, then the servitude survives the severance and becomes an easement by implication.

The court went on to elaborate:

In order for such an easement to be established it must appear not only that the easement was obvious and apparently permanent but also that it is reasonably necessary for the enjoyment of the property, the term "necessary" meaning that there could be no other reasonable mode of enjoying the dominant tenement without the easement. An easement by implication does not arise merely because its use is convenient to the beneficial enjoy-

ment of the dominant portion of the property.

*Thompson,* 272 F.Supp. at 785 (citation omitted). It is clear then that absolute necessity is not required for establishing an easement by implication. Again, the test is whether the easement is reasonably necessary, meaning something more than "mere convenience." The standard was summed up nicely by the court in *Smith v. deFreitas,* 329 F.2d 629, 634 (3d Cir.1964), when it stated:

Likewise if the land retained by the grantor is surrounded by the land conveyed and the land of strangers, the law implies the reservation by the grantor of a way of necessity over the land conveyed. It has also been held at common law that the necessity for the way is not limited to an absolute physical necessity and that it is enough to warrant the implication of a way of necessity to show that the way is reasonably necessary
. . . .

■ To sum up this Court's conclusions of law, it is first unquestionable that an easement for access to land either by necessity or implication can be had against the government under the proper circumstances. To establish an easement by necessity, the plaintiff does not have to prove that he once had a route of access established over the land on which he wishes to impose the easement, but he must prove that: (1) he once owned contemporaneously both the land to which he wants access and the land on which he wishes to impose the easement for access, (2) his unity of title in the tracts was severed by a conveyance of one of those tracts, and (3) the easement is reasonably necessary, both at the time of severance and at the time the easement is to be exercised, for the landowner to obtain access to his remaining tract.

■ For an easement by implication, the plaintiff must prove the same three elements necessary for an easement by necessity, plus a fourth element: that he imposed a permanent and obvious servitude on the part of his property he conveyed in favor of the part he retained, and at the time of severance that servitude was in use.

■ In short, the elements for the two types of easements are identical, except an access route must have existed on the servient tract prior to and at the time of severance in order to establish an easement by implication, while the pre-existence of an access route is not required to establish an easement by necessity.

■ Applying these rules of law to the facts of this case, it is undisputed that the plaintiff once owned both tracts of land in question, that his unity of title in that land was severed by a conveyance through condemnation, and that the access route at issue was in existence prior to, and at the time of, the severance of title, i.e., the conveyance of Parcel No. 135. Because the access route at issue did exist at the time of severance, the issue in this case can be stated simply: Under either theory of easement, is access through Parcel No. 135 reasonably necessary such that a right-of-way through that parcel must be granted to the plaintiff as a matter of law? The Court believes that the plaintiff has made the requisite showing.

This Court made a number of factual findings at trial. The pertinent ones can be summarized as follows. The land owned by the plaintiff was farmed regularly and inhabited at least back to the mid-1930's. A few families, including the Burdesses, lived on the land up until the late 1950's or early 1960's. Sometime in early 1960 the last house on the property burned and there were no permanent inhabitants on the land thereafter.

Those who lived on the Burdess land made use of three unimproved routes of ingress and egress. The Court will term them the Kerney road (running to the west), the River road (running to the east through Parcel No. 135), and the Love Creek road (running to the southeast). It appears that the Kerney road was most often used because it was an all-weather road, though unimproved. The River road was used frequently, although its use was curtailed during rainy weather because it forded a low spot on Love Creek near where that creek emptied into the Arkansas River. The status of the Love Creek road is not as clear as the other routes. It apparently crossed Love Creek by way of a pole bridge, which would frequently wash out. The evidence indicates that this route may have been in use in the 1930's and '40's, but not thereafter with any regularity.

The testimony of the witnesses, particularly Mr. Babcock whom the Court found to be very credible, indicated that the Kerney and River roads were the usual and regular routes of access. Mr. Babcock testified that he truck-farmed part of the Burdess land in the 1930's and '40's, and would haul his produce out over both roads, his choice depending on which direction he wished to go. After the Burdess land ceased to be occupied, a number of individuals, including Mr. Burdess, continued to use it for hunting, fishing and other recreational purposes. The only access routes in use and available at this time were the Kerney and River roads.

In 1965 the Corps of Engineers began construction on Lock and Dam No. 5 and acquired the first parcel, No. 103, of the Burdess property. The old Love Creek road, whatever was left of it, was made completely inaccessible in 1967 when the Corps dredged and diverted Love Creek so that it would flow in a straight northly line to the Arkansas River. The Corps also built a concrete bridge over the creek where it crossed Parcel No. 103. The effect of the diversion was to make the River road passable year-round because Love Creek no longer flowed over it in rainy weather.

The next significant event involving the Burdess land occurred in 1974 when the Corps condemned Parcel No. 135, through which ran the River road. Following that, in 1975, Arkansas Power and Light Company, after buying much of the land surrounding the Burdess property, put up a gate on the Kerney road and refused to allow the plaintiff to pass through it to reach his land. Concerned that both routes of access to his land were now owned, or in the process of being owned, by some rather formidable parties, Mr. Burdess brought suit against Arkansas Power and Light

Company to establish a prescriptive easement on the Kerney road access to his land. That easement was ultimately denied by the Arkansas Court of Appeals. *See Burdess v. Arkansas Power and Light Co.,* 268 Ark. 901, 597 S.W.2d 828 (Ark.App.1980), *review denied,* (April 28, 1980). As a result of that decision, the plaintiff was left with only one route of access to his land, the River road.

When final judgment was entered on the condemnation suit for Parcel No. 135 in December 1976, Mr. Burdess was using the River road for access to his property. It is also clear that although he signed the stipulation of settlement, he maintained an expectation that he could cross Parcel No. 135 to reach his land. And, indeed, he was doing just that until barely a few weeks had passed after the entry of judgment, whereupon the Corps blocked entrance to the River road at Parcel No. 135, thereby completely foreclosing all access to his land.

As was set out at the beginning of this opinion, following this action by the Corps, the plaintiff returned the check for $20,-032.89, which incidentally this Court finds was not intended to compensate the plaintiff for a total loss of access to his remainder, given the amount of the payment and the price of river front property at that time. Furthermore, negotiations began anew for a route of access, and when those failed, this suit was brought.

Applying the elements required for establishing an easement by implication or necessity against the Corps, the Court makes the following findings. Mr. Burdess once owned the two parcels of land involved in this dispute. Prior to the severance of Parcel No. 135 from the remainder, the plaintiff had imposed an obvious and permanent servitude, to wit, the River road, on that parcel in order to benefit the remainder of his land. At the time of severance, December 13, 1976, when final judgment was entered on the condemnation suit and the vesting of title to Parcel No. 135 was confirmed, the River road was in use by the plaintiff to benefit his remainder. In fact, it was the only route of access to his re-mainder. Even if that land had not been in use, or did not exist at that time, access through Parcel No. 135 was the only reasonable way to reach the remainder. Finally, the need for the easement through Parcel No. 135 exists at the present time.

There is an improved public road running to the dam site through Parcels No. 103 and 135. That road ends in a "turn-around" circle just at the border of, or inside, Parcel No. 135. A pile of stones and dirt adjacent to the "turn-around" prevents access to the unimproved section of the River road which lies just to the other side of the barricade.

The Corps argues that there is an unimproved private road beginning just beyond the concrete bridge over Love Creek that is a suitable route of access for the plaintiff. That road, however, appears to require an off-road type vehicle to traverse it. Furthermore, it crosses the land of a third party farmer, returns to Parcel No. 135, exits onto the southern section of the Burdess land, leaves that property and crosses a small piece of what appears to be Arkansas Power and Light property before finally reaching the main part of the Burdess property and its system of unimproved roads. In this respect, Mr. Burdess would have to obtain easements from the Corps as well as the other landowners in order to gain legal and permanent access to his land. This is not a solution to the problem as the Court understands the law.

The Burdess property is surrounded on all sides, except for the Arkansas River side, by the land of the government and the land of strangers. This Court repeats the rule as set out in the case of *Smith v. deFrietas,* 329 F.2d at 634 (footnote omitted):

> Likewise if the land retained by the grantor is surrounded by the land conveyed and the land of strangers, the law implies the reservation by the grantor of a way of necessity over the land conveyed.

There is no means of access to a public road from the plaintiff's land except through the land of the government and the land of strangers. The Court recognizes that Arkansas law provides for a means to estab-

lish a private road over the lands of others. Ark.Stat.Ann. 76–110. Nevertheless, that statute requires the same showing of necessity for the access route as does the common law rule for an easement by necessity. *See, e.g., Roth v. Dale,* 206 Ark. 735, 177 S.W.2d 179 (1944).

The plaintiff is essentially being told by the Corps to obtain a right-of-way from the other landowners, who in turn can, and may, do as did Arkansas Power and Light, tell the plaintiff to obtain his right of access from the government. This situation is intolerable. The Supreme Court of Missouri put it this way:

> While plaintiffs may have a choice between surrounding landowners against whom they might have proceeded for the establishment of a private road, neither Sec. 228.340 nor the case law indicates that one landowner can defeat a plaintiff's right to a way of necessity simply by pointing to another against whom plaintiff might have sought relief.

 This Court finds the sound rule to be that if a landowner is without legal access to his property, and he once had a right of access or could have a right of access via what was once part of his own land, which land now belongs to another, the way of necessity should be applied first against the owner of the servient tract if the elements for a way of necessity are proved, notwithstanding the fact that there is a potential means of access across the property of other landowners by way of acquiring easements.

The Court having found that the plaintiff has a right either to an easement by necessity or implication for a right-of-way over Parcel No. 135, the government must now permit him that right-of-way.[1] In this respect, the Court hereby directs the parties to confer and to submit to this Court, either jointly or individually, a report detailing the provisions that the United States will make to insure that the plaintiff has his right-of-way. The parties will have until January 3, 1983, in which to so inform the Court.

It is so Ordered.

---

1. The government, of course, always has the right to institute condemnation proceedings against Mr. Burdess' remainder. Nevertheless, public purpose and just compensation would have to be shown before the government taking could be effectuated.