UNITED STATES of America, United States Department of the Interior, Plaintiff

v.

Stephen C.M. BALLIET and Harold Smith, County Judge, Newton County, Arkansas Defendants

Stephen C.M. Balliet, Third Party Plaintiff

v.

Eddie Ward Jones, Mark Anthony Jones and Tammy Jones, His Wife, Third Party Defendants

No. CIV. 00–3053.

United States District Court, W.D. Arkansas, Harrison Division.

Feb. 8, 2001.

Matt W. Fleming, U.S. Attorney's Office, Fort Smith, AR, for United States of America, United States Department of the Interior, plaintiffs.

James E. Goldie, Davis & Goldie, Harrison, AR, for Stephen C. M. Balliet, Harold—Smith, County Judge, Newton County, Arkansas, defendants.

Thomas A. Martin, Martin Law Firm, P.A., Jasper, AR, for Tammy Jones, Eddie Ward Jones, Mark Anthony Jones.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

This case is before the court on the motion of the United States of America for summary judgment. No response to the motion has been filed in the time allowed by the Local Rules for the Eastern and Western Districts of Arkansas.

### Background.

Stephen Balliet brought an action against Eddie Ward Jones and Mark Anthony Jones in the Newton County Court pursuant to Ark.Code Ann. § 27–66–401 *et seq.* (Repl.1994) to establish a private roadway over land owned by the Joneses. The private road was to provide a means of ingress and egress to land owned by Balliet. The Joneses, in the Newton County action, filed a cross-complaint against the United States alleging that the private road should be across land owned by the United States rather than their land.

The United States contested the jurisdiction of the Newton County Court. Without discussing the jurisdictional objections of the United States, Newton County Judge Harold Smith entered an order on May 9, 2000, granting Balliet the right to build a thirty-foot wide private roadway across land owned by the United States and comprising part of the Buffalo National River. The order granting the right-of-way, without analysis, states that "[t]his Court has jurisdiction over the parties and the subject matter thereto."

On July 24, 2000, the United States filed this action. The United States contends the county court lacked jurisdiction over the United States and its order establishing the private roadway was null and void. It contends the Quiet Title Act provides the exclusive means of establishing an easement or otherwise challenging the United States' title to real property.

On July 25, 2000, the United States filed a motion for temporary restraining order and a motion for preliminary injunction. Its request for a temporary restraining order was granted on that same day and a hearing on the preliminary injunction motion set.

The temporary restraining order prohibited defendants from taking any action to construct the court-ordered road or to enforce the Newton County Court order. The hearing on the preliminary injunction motion was canceled when, by agreement of the parties, the injunction entered on July 25th was extended until there could be a decision on the merits of this case.

On August 2, 2000, Balliet filed an answer, counterclaim and third-party complaint. The third-party complaint named the Joneses as defendants.

The land owned by Balliet is located in Newton County, Arkansas, and described as the Southeast Quarter of Section 2, Township 16 North, Range 21 West. The land is bordered on the east, west, and south sides by land owned by the United States, by and through the Department of Interior. The land on the east side of the Balliet property comprises a portion of the Buffalo National River (BNR). The north side of Balliet's land is bordered by land owned by the Joneses. No public roadway crosses Balliet's land.

The BNR was established on March 1, 1972. BNR is administered by the Secretary of the Interior. The Secretary's responsibility for BNR is delegated to the Director of the National Park Service (NPS).

According to the allegations of the third-party complaint, since October 24, 1998, the Joneses have barred and blocked Balliet's access to his land. Balliet alleges he had previously been given permission to access his land by use of a road crossing the Joneses' land.

Balliet contends the most convenient access to his property and the access that places the least burden on the subservient estate would be for him to use an existing dirt roadway which runs north from Newton County Road No. 80 for a distance of 60 to 100 feet. This access is across the BNR land. Balliet contends this dirt roadway existed from Newton County Road No. 80 to his property prior to 1976.

On January 10, 2001, a default was entered against defendant Harold Smith. On January 8, 2001, the United States filed the instant motion for summary judgment. It contends it is entitled to judgment as a matter of law on its complaint and on the allegations of the counterclaim.

According to the United States, the site of the court-ordered road is located in the BNR on land which the United States purchased in 1977 from a private citizen. The land had been federal public lands until December 15, 1882, when the United States General Land Office (GLO) issued a patent to John Q. Deaton (the Deaton Patent) which included the lands now referred to as BNR Tract 12–100.

From 1882 until 1977, the land remained it private ownership. This tract of land was purchased by the United States in 1977 from John C. Darbro, Jr.

Similarly the lands now belonging to Balliet and the Joneses were, in the nineteenth century, federal public lands. The three tracts of land passed into private ownership through the issuance of three different federal public lands patents.

The public lands that now comprise the Balliet property became private on February 1, 1901, when the GLO issued a patent to Thomas G. Johnson (the Johnson Patent). The public lands that now comprise the Joneses property became private on September 7, 1900, when the GLO issue a patent to Jesse Spencer (the Spencer Patent).

There is no evidence that BNR Tract 12–100, the Balliet property, and the Jones property, or any combination of them, were ever held in common ownership by any private owner. Tract 12–100 lies east of lands owned by Balliet. In his counterclaim, Balliet alleges that, before the BNR was established and the United States purchased Tract 12–100, a dirt roadway ran from Newton County Road No. 80 to his property. The United States concedes that the site of the court-ordered road shows evidence of a pre-existing road. However, the United States argues the pre-existing road predates 1981 and that since 1981 no one has used the court-ordered road to access the Balliet property.

Until his dispute with the Joneses, Balliet had used what is referred to as the Northwest Road to access his property. The Northwest Road is an existing dirt road which crosses the adjoining Jones property which lies to the north of the Balliet property.

The Northwest Road runs in a northwestly direction through the northwestern area of the Balliet property. It then cuts diagonally for a short distance across the far southwestern area of the Jones property.

On the west of the Balliet property is a tract of land which is owned by the United States and administered by the NPS but outside the boundaries of the BNR. This tract is referred to as the South Severance Tract and is identified as BNR Tract 11–115.

Immediately north of Tract 11–115 is another tract of land owned by the United States and administered by the NPS but outside the boundaries of the BNR. This tract is referred to as the North Severance Tract and has not been given a BNR tract number. Although currently outside the boundaries of the BNR, the NPS is considering adding the severance tracts to the park.

Upon leaving the Jones property, the Northwest Road crosses the North Severance Tract for a substantial distance. The road existed when the United States purchased the property. However, the United States states it does not know whether either Balliet or the Joneses have any legal right to use the portion of the Northwest Road that crosses the North Severance Tract.

After the Joneses denied Balliet access to the Jones property for use of the Northwest Road, the NPS issued Balliet a special use permit allowing him to temporarily access his property by crossing approximately 310 feet of the North and South Severance Tracts in order to link the existing segments of the Northwest Road without crossing the Jones property. The NPS has agreed to allow Balliet to continue to use this access during the pendency of this case. The NPS specifies that it would not have granted this special use

permit had the severance tracts already been added to the BNR. Since the NPS is considering adding the severance tracts to the park, NPS states is does not want Balliet to have permanent access to his property across them.

According to the United States, Balliet also has access to his property by an existing dirt road across its northeastern area. This dirt road is referred to as the Northeast Road. The Northeast Road crosses the BNR, entering the northwest portion of Tract 12–100 in an area that currently is separated from the remainder of the tract by a fence and gate.

The Northeast Road links up with another dirt road, referred to as the Hilary Jones Road, on Tract 12–100, which runs through the gate, and goes approximately one-quarter mile across Tract 12–100 to an intersection with Newton County Road No. 80. The United States contends that either some or all of the purported Newton County Road No. 80 is not a county road because there is no evidence that it ever was established as such in conformance with Arkansas law.

The NPS states it prefers that Balliet use the Northeast Road for access to his property. It states the Joneses already use both the portion of the Northeast Road that runs through the gate and Newton County Road No. 80 for access to the Jones property. Additionally, the owner of the private property north of Tract 12–100 also uses Newton County Road No. 80 through the Park in that area. Thus, the NPS states Balliet's use of the Northeast Road would conform with those existing uses.

***Summary Judgment Standard.***

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985)).

***Discussion.***

The United States contends it is entitled to judgment as a matter of law on its complaint and on the allegations of Balliet's counterclaim. It presents a number of arguments in support of its motion.

**1. The Newton County Court Order.**

The United States first contends that it is not legally bound by the order of the Newton County Judge. In his answer, Balliet contends the United States is bound by the court order since it was a final order from which no appeal was taken. He therefore alleges that the res judicata applies and prevents the United States from contesting the validity of the order.

The United States argues it has not waived its sovereign immunity for a lawsuit against the BNR in Newton County Court. *See United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). It points

out it objected to the Newton County Court's jurisdiction and filed a motion to dismiss the BNR from the County Court's case. This motion was never ruled on by the County Judge. It therefore contends the Newton County Court had no jurisdiction over either the BNR or BNR Tract 12–100.

■■■ A proceeding against property in which the United States has an interest is a suit against the United States. *The Siren*, 74 U.S. 152 (7 Wall. 152), 19 L.Ed. 129 (1868). Claims for a right-of-way or easement are normally considered quiet title actions. *See e.g., Burdess v. United States*, 553 F.Supp. 646 (E.D.Ark.1982).

■■■ This court has jurisdiction over actions to quiet title to land with respect to easement access. Pursuant to 28 U.S.C. § 1346(f) the district courts of the United States have exclusive jurisdiction over actions brought against the United States to quiet title to land pursuant to 28 U.S.C. § 2409a. *See also McClellan v. Kimball*, 623 F.2d 83, 86 (9th Cir.1980) ("A state court does not have jurisdiction to decide quiet title actions against the United States.").

As the Ninth Circuit recently commented, the relationship between sovereign immunity and subject matter jurisdiction can be confusing. *Powelson v. United States*, 150 F.3d 1103, 1104 (9th Cir.1998). In footnote one of the opinion, the Ninth Circuit remarked that:

> Justice Kennedy of the Supreme Court has recently noted in a somewhat different context that the relationship between sovereign immunity and subject matter jurisdiction can be a murky one. *See Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 393–97, 118 S.Ct. 2047, 2055–56, 141 L.Ed.2d 364 (1998) (Kennedy concurring) (noting that the Court has sometimes treated Eleventh Amendment immunity more like personal jurisdiction and other times more like subject matter jurisdiction).

*Id.* at 1104 n. 1.

In the case of *In re Prairie Island Dakota Sioux*, 21 F.3d 302 (8th Cir.1994), the Eighth Circuit noted it was an error to equate sovereign immunity and subject matter jurisdiction. It stated that "[s]overeign immunity . . . is not of the same character as subject matter jurisdiction." *Id.* at 304.

■■■ First, it noted that sovereign immunity may be waived in certain circumstances and is subject to the plenary power of Congress. *Id.* On the other hand, lack of subject matter jurisdiction may not be waived. *Id.* (citations omitted).

Second, it said "sovereign immunity operates essentially as a party's possible defense[1] to a cause of action. In contrast, subject matter jurisdiction is primary and an absolute stricture on the court." *Id.* at 304–05 (citations omitted).

■■■ Finally, the court noted that "a waiver of sovereign immunity cannot extend a court's subject matter jurisdiction." *Id.* at 305 (citations omitted). It therefore concluded "that sovereign immunity is a jurisdictional consideration separate from subject matter jurisdiction." *Id.* (citations omitted).

Thus, "[t]o sue the United States, [a plaintiff] must show both a waiver of sovereign immunity and a grant of subject matter jurisdiction." *V S Limited Partnership v. Department of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir.2000) (*citing Presidential Gardens Associates. v. United States*, 175 F.3d 132, 139 (2d Cir.1999)). "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' 'consent to be sued in

---

1. In a recent case, the Eighth Circuit clarified that this statement in *Prairie Island* was not a holding that sovereign immunity is an affirmative defense that is waived if not raised in an answer. *Hagen v. Sisseton–Wahpeton Community College*, 205 F.3d 1040, 1043 (8th Cir.2000). In fact, it noted that "because 'sovereign immunity . . . is a jurisdictional threshold matter . . . [i]t can be raised for the first time on appeal.'" *Id.* (*quoting Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir.1999)).

any court define that court's jurisdiction to entertain that suit.'" *Brown v. United States,* 151 F.3d 800, 803 (8th Cir.1998) (*quoting FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (internal quotation marks omitted)). *See also Preferred Risk Mut. Ins. Co. v. United States,* 86 F.3d 789, 793 (8th Cir.1996) (Sovereign immunity is a jurisdictional question which the government can raise at any time).

The . Supreme Court has stated that "[t]here can be no consent by implication or by use of ambiguous language.... The consent necessary to waive the traditional immunity must be express, and it must be strictly construed." *Library of Congress v. Shaw,* 478 U.S. 310, 319, 106 S.Ct. 2957, 2964, 92 L.Ed.2d 250 (1986) (decision superseded in part by the enactment of the Civil Rights Act of 1991).

■ The Quiet Title Act waives the United States' sovereign immunity but vests exclusive subject matter jurisdiction over such suits with the federal district courts. Here, Balliet has not shown that the United States waived its sovereign immunity for suits such as this in state court, or that the state court has jurisdiction of actions under the Quiet Title Act, or that the United States played an active role in the Newton County Court case such that it should be bound by the order of the Newton County Court.

■ For res judicata to apply, it must be shown the court entering the final judgment was a court having competent jurisdiction over the subject matter and the parties. Here Balliet has made no attempt to establish that the Newton County Court was a court of competent jurisdiction. He has failed to show that res judicata applies and that the United States is bound by the Newton County Court order.

#### 2. Balliet's Claimed Easement.

As he has failed to respond to the summary judgment motion, the court is limited to reviewing Balliet's allegations as set forth in the pleadings. In his counterclaim, Balliet appears to claim an easement by necessity across BNR Tract 12–100, an easement by implication, and/or an easement by prescription. Additionally, Balliet alleges he has the right to use an existing dirt road on the site of the court-ordered road by virtue of Revised Statute 2477.

■ Both easements by implication and easements of necessity are appurtenant easements. That is, they benefit a particular parcel of land and cannot be conveyed apart from the dominant tenement. *Patterson v. Buffalo Nat. River,* 76 F.3d 221 (8th Cir.1996). Both types are created upon severance of the ownership of a single parcel of land that had previously been held by one owner. *Id.* at 225.

In the case of *Manitowoc Remanufacturing, Inc. v. Vocque,* 307 Ark. 271, 819 S.W.2d 275 (1991) the court stated as follows:

When an owner uses a part of his or her land for the benefit of another part, a quasi-easement has been held to exist. The part of the land benefitted has been referred to as the quasi-dominant tenement, and the land utilized for the benefit of the other property has been referred to as the quasi-servient tenement. When the owner of the land subject to a quasi-easement in favor of another part conveys the quasi-dominant tenement, an easement corresponding to the pre-existing quasi-easement is vested in the grantee of the land. The quasi-easement must be of an apparent, continuous, and necessary character. These easements have been referred to as implied easements corresponding to pre-existing quasi-easements.

The Court stated the general rule that no easement exists if there is unity of ownership. Once a severance occurs by a sale of a portion of the property, easements or servitudes are created corresponding to the benefits and burdens existing at the time of the sale. When the owner of an estate sells a portion of it, the purchaser takes the land subject to the benefits and burdens existing at

the time of the sale. If a burden is imposed upon the portion sold, the purchaser takes subject to the burden provided it was open and visible. Specifically, the Court held "[t]he parties are presumed to contract in reference to the condition of the property at the time of the sale and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts."

An implied easement corresponding to a pre-existing quasi-easement is similar to an implied easement by necessity. This Court has recognized that when, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part, and at the time of a later severance of ownership the servitude is in use and is reasonably necessary for the enjoyment of the part of the property favored by the servitude, the servitude survives the severance and becomes an easement by implication. The servitude must be obvious, apparently permanent, and reasonably necessary for the enjoyment of the property. "Necessary" has been held to mean there could be no other reasonable mode of enjoying the dominant tenement without the easement.

*Id.,* 307 Ark. at 276–277, 819 S.W.2d 275 (citations omitted).

█ The three prerequisites of an easement of necessity are: (1) the titles to the two tracts in question must have been held by one person; (2) the unity of title must have been severed by a conveyance of one of the tracts; and (3) the easement must be necessary in order for the owner of the dominant tenement to use his land with the necessity existing both at the time of the severance of title and the time of exercise of the easement. *Powell v. Miller,* 30 Ark.App. 157, 162, 785 S.W.2d 37 (1990) (*citing Burdess v. United States,* 553 F.Supp. 646, 649–50 (E.D.Ark.1982)).

█ "As opposed to an easement by necessity, which theoretically allows for a route of access where one previously did not exist, an easement by implication rests on the theory that a route of access was in existence at the time of the severance of a single parcel of land." *Burdess,* 553 F.Supp. at 650. "For an easement by implication, the plaintiff must prove the same three elements necessary for an easement by necessity, plus a fourth element: that he imposed a permanent and obvious servitude on the part of his property he conveyed in favor of the part he retained, and at the time of severance that servitude was in use." *Id. See also Carver v. Jones,* 28 Ark.App. 288, 773 S.W.2d 842 (1989).

█ As the United States points out, there is no evidence, and Balliet has not averred any proof, that the legal or factual requirements of either an easement by necessity or an easement by implication over Tract 12–100 in favor of the Balliet property have been met. First, it appears that Tract 12–100 and the Balliet property do not derive from a single tract owned by one party. Tract 12–100 derives from the Deaton Patent while the Balliet property derives from the Johnson Patent.

The only time the two properties had a single owner was when they were held by the United States as federal public lands. The unity of title was severed when the lands now comprising BNR Tract 12–100 were patented in 1882 (the Deaton Patent). What is now the Balliet property remained public lands until 1901 when the Johnson Patent was issued.

Although an easement of necessity or by implication may arise when the United States issues a patent for public lands, *see Kinscherff v. United States,* 586 F.2d 159, 161 (10th Cir.1978) (easement of necessity), Balliet has presented nothing that would establish the existence of either type of easement at the time the patents were granted. *See also United States v. Dunn,* 478 F.2d 443 (9th Cir.1973) (The doctrine of easement by necessity applies against the United States); *Fitzgerald v. United States,* 932 F.Supp. 1195, 1202 (D.Ariz. 1996) (same). There is no indication that

the particular road Balliet seeks access over existed, or if it existed, that it was the only access route. He has not shown the existence of a servitude over the public lands now comprising BNR 12–100 in favor of the lands now comprising the Balliet property.

Additionally, since the Deaton Patent from which BNR Tract 12–100 was derived was issued in 1882 and the Johnson Patent from which the Balliet property was derived was not issued until 1901, it appears the United States could not have retained an easement of necessity over the land now known as BNR 12–100. In *Leo Sheep Co. v. United States,* 440 U.S. 668, 99 S.Ct. 1403, 59 L.Ed.2d 677 (1979), the Supreme Court noted rejected the argument of the United States that when it conveys a portion of its land to a private landowner and retains the rest that it retains a right-of-way or easement of necessity to pass over the granted property. *Id.,* 440 U.S. at 678–79, 99 S.Ct. 1403. It pointed out that such an easement is not actually a necessity because the Government has the power of eminent domain. *Id.,* 440 U.S. at 679, 99 S.Ct. 1403.

 Similarly, we find no issues of fact as to the existence of an implied easement over Tract 12–100. While "[a]n implied easement can exist if [the United States] intended to grant an easement for access when it granted title to the [property], . . . [t]he general rule is that nothing passes by implication in a public grant." *Fitzgerald,* 932 F.Supp. at 1202.

Balliet also asserts that his predecessor acquired a prescriptive easement over the dirt road comprising the site of the court-ordered road and that the easement continued to exist when he acquired the property. "One asserting an easement by prescription must show by a preponderance of the evidence that his or her use [or that of a predecessor in title] has been adverse to the true owner and under a claim of right for the statutory period." *Gazaway v. Pugh,* 69 Ark.App. 297, 302, 12 S.W.3d 662 (2000) (*citing Johnson v. Jones,* 64 Ark.

App. 20, 977 S.W.2d 903 (1998)). The court stated that:

> [w]here there is usage of a passageway over land, whether it be by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to this interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right. *Fullenwider v. Kitchens,* 223 Ark. 442, 266 S.W.2d 281 (1954). Moreover, the length of time and circumstances under which the roadway was opened and used are sufficient to establish an adverse use. *Zunamon v. Jones,* 271 Ark. 789, 610 S.W.2d 286 (Ark.App.1981).

*Gazaway,* 69 Ark.App. at 302, 12 S.W.3d 662.

 The United States argues that a former owner of the Balliet property could not have obtained a prescriptive easement over the site of the court-ordered road any time after the United States purchased Tract 12–100 in 1977 because adverse possession does not run against the United States. It is true that adverse possession can not be used to establish title as against the United States. *United States v. California,* 332 U.S. 19, 39–40, 67 S.Ct. 1658, 1668–69, 91 L.Ed. 1889 (1947); *United States v. Vasarajs,* 908 F.2d 443, 446 n. 4 (9th Cir.1990).

Even if a prescriptive easement, *i.e.,* an easement by adverse possession, could be said to run against the government, Balliet, who has the burden of demonstrating adverse use, has presented no proof of an adverse claim to support a prescriptive easement. Nor has Balliet presented any proof tending to support the acquisition of a prescriptive easement before the land comprising Tract 12–100 was purchased by the United States.

■ Balliet's final claim is that he has a right to use an existing dirt road on the site of the court-ordered road by virtue of federal Revised Statute 2477. Balliet alleges that the dirt roadway was in existence before 1976 and that he and others should be allowed to use the old dirt road up to the boundary of his land.

■ Prior to its repeal, Revised Statute 2477 (R.S. 2477) provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932 (1970), repealed by Federal Land Policy Management Act, Pub.L. No. 94–579, § 706(a), 90 Stat. 2743, 2793 (1976). When R.S. 2477 was repealed, any rights-of-way that existed before October 21, 1976, were preserved. 43 U.S.C. § 1769(a). *See also Barker v. Board of County Commissioners of County of La Plata, Colo.,* 49 F.Supp.2d 1203, 1214 (D.Colo.1999). "In interpreting this grant of rights in federal land, we must consider the condition of the country at the time of the grant, the declared purpose of the statute, and the other parts of the statute." *Humboldt County v. United States,* 684 F.2d 1276, 1280 (9th Cir.1982) (citation omitted). Any doubt as to the scope of the grant under R.S. 2477 must be resolved in favor of the government. *Id.* (citation omitted).

The phrase public lands refers to land which is subject to sale or other disposition under "general laws, excluding those to which any claims or rights of others have attached." *Humboldt,* 684 F.2d at 1281 (citations omitted). The United States concedes Tract 12–100 was federal public lands prior to the date of the issuance of the Deaton Patent on December 15, 1882. However, from that date until the United States purchased Tract 12–100 from John Darbro on October 21, 1977, it states the tract was private land.

As R.S. 2477 did not provide for the establishment of rights of way over private lands, no right of way could have been created between December of 1882 and October of 1977. After October of 1977,

the United States points out R.S. 2477 was inapplicable because it was repealed on October 21, 1976. Moreover, the United States points out BNR Tract 12–100 was purchased in 1977 for public use. Thus, the land fell outside the purview of R.S. 2477 even if it had not been repealed. *See e.g., United States v. Garfield County,* 122 F.Supp.2d 1201, 1214 (D.Utah 2000) (R.S. 2477 made available "rights-of-way only over the unreserved public lands; excluded from the grant were any lands that Congress or its designees chose to reserve for a particular purpose.").

We agree. Revised Statute 2477 has no applicability to the land from 1882 when it became privately owned until 1977 when the United States purchased the land. The statute was repealed prior to the United States once again taking title to the land. Further, as the 1977 purchase was for public use, R.S. 2477 provides Balliet with no right of way.

Thus, "[t]o establish an easement [pursuant to R.S. 2477], [Balliet] must show that the road in question was built before the surrounding land lost its public character." *Adams v. United States,* 3 F.3d 1254, 1258 (9th Cir.1993) (citation omitted). In other words, Balliet must show the road was built or existed before 1882 when the land was public land. *Id. See also Humboldt,* 684 F.2d at 1281 ("Thus, unless the land surrounding the ... road was public land when the road was built, the County could not have acquired any right in it under section 932 [R.S. 2477].")*; Fitzgerald v. United States,* 932 F.Supp. 1195, 1201 (D.Ariz.1996) ("To establish an R.S. 2477 easement, plaintiffs must show that the road in question was built before the surrounding land was reserved for a National Forest.").

In this regard, Balliet merely alleges the road was in existence prior to 1976. He presents nothing suggesting the road was in existence before the land became privately owned in 1882.

### 3. The Third–Party Defendants.

 On August 2, 2000, Balliet filed a third-party complaint pursuant to Rule 14 of the Federal Rules of Civil Procedure against the Joneses. Balliet alleges that the Joneses:

> are necessary parties to the Counter-claim of the Defendant for the reasons that the real estate ·of the Defendant, which is landlocked, with no access, is surrounded on three (3) sides by the Plaintiff but on the fourth (4th) (North) side, the landlocked real estate of the defendant is bound by the lands belonging to the Third Party Defendants and without the Third Party Defendants being a party to this lawsuit, the Defendant cannot receive full and complete relief.

*Third Party Complaint* at ¶ 1. Balliet prays that "a private road be established over the lands, by necessity, of the Third Party Defendants, costs, attorney's fees and all the proper relief to which the Third Party Plaintiff is entitled."

The United States contends the Joneses are not proper third-party defendants under Rule 14. Rule 14(a) provides in relevant part as follows:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

Fed.R.Civ.P. 14(a).

> As the Second Circuit recently stated:
> To sustain an impleader action, the third-party defendant ... "must be liable secondarily to the original defendant, or that the third party... must necessarily be liable over to the defendant ... for all or part of the plaintiff's ... recovery, or that the defendant ... must attempt to pass on to the third party ... all or part of the liability asserted against the defendant". This means that the impleader action must be de-

pendent on, or derivative of, the main or third-party claim.

*Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 436–38 (2d Cir.2000) (internal quotations marks and citations omitted).

Clearly, Rule 14 impleader is an improper mechanism given the facts of this case. The Joneses are in no way secondarily liable to Balliet for the claims of the United States.

### *Conclusion.*

For the reasons stated, the United States' motion for summary judgment will be granted by a separate order entered concurrently herewith.